# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 10-2341-E

*Dreaming Code, Inc.*, Plaintiff(s)

v.

*CondoDomain.com, LLC*, Defendant(s)
*et al.*

## SUMMONS

To the above-named Defendant: *CondoDomain.com, LLC*

You are hereby summoned and required to serve upon *Seth K. Salinger*
plaintiff's attorney, whose address is *53 Langley Rd, #270, Newton,* an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the _____ *Eleventh* _____ day of
_____ *June* _____, in the year of ~~our Lord~~ two thousand _____ *& Ten* _____.

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 8/09

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 10 - 234 - F

Dreaming Code, Inc.

, Plff(s).

v.

Condo Domain Corp. LLC

, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

---

, 20

**N.B.   TO PROCESS SERVER: –**

**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

Dated: _____ , 20 ___

PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____ , 20 ___ I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                          SUPERIOR COURT
                                     Civil Docket No.:

_____

DREAMING CODE, INC.

        Plaintiff,

        v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

        Defendants,

BANK OF AMERICA, N.A.,

        Trustee Defendant,
_____

### *EX PARTE* MOTION OF DREAMING CODE, INC.
### FOR SHORT ORDER OF NOTICE

        The plaintiff, Dreaming Code, Inc.  ("**Dreaming Code**"), moves, this Court grant a

short order of notice on Dreaming Code's Requests for trustee Attachment and Injunctive

relief and that the Court schedule these matters for hearing on _____, June __,

2010 at 2:00 P.M. in Suffolk Superior Court.

        WHEREFORE, Dreaming Code moves for allowance of this Motion and for such

further relief as the Court deems equitable and just.

Dreaming Code, Inc.

By its attorneys

Seth H. Salinger (BBO #555426)
53 Langley Road
Suite 270
Piccadilly Square
Newton, MA 02459
Telephone # (617) 244-7630
Fax # (617) 244-7640
Sethsal@gmail.com

Robert Keough (BBO #564535)
CUMSKY & LEVIN, LLP
6 University Road
Cambridge, MA  02138
Telephone # (617) 492-9700
Fax # (617) 492-9020
RKeough@CumskyLevin.Com

Dated June 16, 2010

2

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. *10-2341-E*

*Dreaming Code, Inc.* , Plaintiff(s)

v.

*Anthony M. Longo, Jr.* , Defendant(s)

### SUMMONS

*336 Commonwealth Av.
Apt. 8F
Boston, MA 02115*

To the above-named Defendant: *Anthony M. Longo, Jr.*

You are hereby summoned and required to serve upon *Seth H. Salinger*

plaintiff's attorney, whose address is *53 Langley Rd, #270 Newton,* an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness,  Barbara J. Rouse, Esquire, at Boston, the _____*Eleventh*_____ day of
_____*June*_____, in the year of ~~our Lord~~ two thousand *& Ten* .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 10M - 8/09

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 10 - 2341 - E

Dreaming Code Inc. , Plff(s).

v.

Anthony M. Longo Jr. , Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

20 ,

**N.B.    TO PROCESS SERVER:—**

**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

Dated: _____ 20 ___.

manner (See Mass. R. Civ. P. 4 (d) (1-5):

together with a copy of the complaint in this action, upon the within-named defendant, in the following

I hereby certify and return that on _____ 20 ___, I served a copy of the within summons,

**PROOF OF SERVICE OF PROCESS**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT
                                               Civil Docket No.:

_____

DREAMING CODE, INC.

        Plaintiff,

        v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

        Defendants,

BANK OF AMERICA, N.A.,

        Trustee Defendant,

_____

### *EX PARTE* MOTION OF DREAMING CODE, INC.
### FOR SHORT ORDER OF NOTICE

The plaintiff, Dreaming Code, Inc.  ("**Dreaming Code**"), moves, this Court grant a short order of notice on Dreaming Code's Requests for trustee Attachment and Injunctive relief and that the Court schedule these matters for hearing on _____, June __, 2010 at 2:00 P.M. in Suffolk Superior Court.

WHEREFORE, Dreaming Code moves for allowance of this Motion and for such further relief as the Court deems equitable and just.

Dreaming Code, Inc.

By its attorneys

Seth H. Salinger (BBO #555426)
53 Langley Road
Suite 270
Piccadilly Square
Newton, MA 02459
Telephone # (617) 244-7630
Fax # (617) 244-7640
Sethsal@gmail.com

Robert Keough (BBO #564535)
CUMSKY & LEVIN, LLP
6 University Road
Cambridge, MA  02138
Telephone # (617) 492-9700
Fax # (617) 492-9020
RKeough@CumskyLevin.Com

Dated June 10, 2010

2

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS<br>SUPERIOR COURT DEPARTMENT<br>COUNTY OF   SUFFOLK | DOCKET NO. _____ |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| **Dreaming Code, Inc.** | **CondoDomain.com, LLC,<br>and Anthony J. Longo, Jr.** |

| Plaintiff Atty | Seth H. Salinger, Esq. |
|---|---|
| Address | Cumsky & Levin LLP, 6 University Road |
| City | Cambridge | State | MA | Zip Code | 02138 |
| Tel. | +1 (617) 492-9700 | BBO# | 555,426 |

| Type Defendant's Attorney Name |
|---|
| Defendant Atty | |
| Address | |
| City | | State | | Zip Code | |

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

CODE NO.        TYPE OF ACTION (specify)        TRACK                    **IS THIS A JURY CASE?**

**A01 Services Labor and Materials -  Fast Track**        (•) ] Yes    ( ) ] No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
### (Attach additional sheets as necessary)

A.   Documented medical expenses to date:
    1.   Total hospital expenses                                                                                                $_____
    2.   Total doctor expenses                                                                                                 $_____
    3.   Total chiropractic expenses                                                                                        $_____
    4.   Total physical therapy expenses                                                                                 $_____
    5.   Total other expenses (describe)                                                                                  $_____
                                                                **Subtotal**    $_____
B.   Documented lost wages and compensation to date                                                                 $_____
C.   Documented property damages to date                                                                               $_____
D.   Reasonably anticipated future medical expenses                                                                    $_____
E.   Reasonably anticipated lost wages and compensation to date                                                       $_____
F.   Other documented items of damages (describe)
                                                                       $_____
G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                               **Total** $_____

## CONTRACT CLAIMS
### (Attach additional sheets as necessary)
Provide a detailed description of claim(s):

| Defendant breached a contract for provision of web design and hosting services and unlawfully copied proprietary content. |
|---|

*$820,000*

**TOTAL**        $.............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____         Date:    Jun 11, 2010
A.O.S.C. 3-2007



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                          SUPERIOR COURT
                                     Civil Docket No.:

                                     10  2341  E

---

DREAMING CODE, INC.

    Plaintiff,

    v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

    Defendants,


BANK OF AMERICA, N.A.,

    Trustee Defendant,

---

## MOTION TO APPOINT SPECIAL PROCESS SERVER

The Plaintiff, Dreaming Code, Inc. ("**Dreaming Code**"), hereby moves that this

Court appoint DHR Associates of Cambridge, Massachusetts to serve all process in the

instant action, all the employees of said company being over 18 years old and having no

interest in the action.

WHEREFORE, Dreaming Code moves for allowance of this Motion and for such

further relief as the Court deems equitable and just.

Dreaming Code, Inc.

By its attorneys

Seth H. Salinger (BBO #655426)
53 Langley Road
Suite 270
Piccadilly Square
Newton, MA 02459
Telephone # (617) 244-7630
Fax # (617) 244-7640
Sethsal@gmail.com

Robert Keough (BBO #564535)
CUMSKY & LEVIN, LLP
6 University Road
Cambridge, MA  02138
Telephone # (617) 492-9700
Fax # (617) 492-9020
RKeough@CumskyLevin.Com

Dated June *10*, 2010

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT
                                               Civil Docket No.:

---

DREAMING CODE, INC.

           Plaintiff,

           v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

           Defendants,


BANK OF AMERICA, N.A.,


           Trustee Defendant,

---

## <u>VERIFIED COMPLAINT</u>

### <u>Introductory Statement</u>

1.     The plaintiff, Dreaming Code, Inc., a Massachusetts corporation in the business of

software and commercial internet web design, managed internet web hosting, and

software production for individuals and businesses, brings this Verified Complaint

to recover approximately three hundred and twenty-two thousand dollars

($322,000.00) from the defendant, CondoDomain.com, LLC.  As of the date of this

Verified Complaint, the defendant, CondoDomain.com, LLC, has been using the

websites containing proprietary content and code developed specifically for it and launched by the plaintiff, Dreaming Code, Inc., without paying for same, despite multiple representations over an extended period of time by its principal, the defendant, Anthony J. Longo, Jr., that it would do so.  These representations and promises of payment (accompanied by intermittent minimal payments over time) and the defendants' tales of white knight investors and supposedly imminent major real estate closings that were to reap huge financial awards, together with promises of other cash infusions, were all designed to disguise CondoDomain.com, LLC's misappropriation of  Dreaming Code, Inc.'s proprietary content and code, and to hinder and delay Dreaming Code, Inc. in its good faith effort to get paid for what amounts to thousands of hours of work, while at the same time, inducing Dreaming Code, Inc. to continue to provide services – and to expand them – on behalf of CondoDomain.com, LLC. In fact, the defendant, CondoDomain.com, LLC., has admitted numerous times that it owes the compensation sought by the plaintiff, that it has benefited and continues to benefit from the plaintiff's products and services, and that it has been thoroughly pleased with the plaintiff's work. Further, in addition to not paying Dreaming Code, Inc. the monthly service and licensing fees that it was contractually obligated to, CondoDomain.com, LLC, through the repeated representations of its principal and officer, Anthony J. Longo, Jr., also promised to compensate Dreaming Code with an equity stake in the defendant's limited liability company. However, as with its promises of monthly cash payments, the defendants' equity offer amounted to nothing more than empty words. Recently, when it became clear that the plaintiff, Dreaming Code, Inc., was intensifying its efforts to be paid

the money it is owed, the defendant, CondoDomain.com, LLC, in violation of its contractual notice obligations, and at the direction of its principal and officer, Anthony J. Longo, Jr., and without notice to Dreaming Code, Inc., withdrew its website from the plaintiff's web server and relocated it to a third party host, to make it more difficult for the plaintiff to enforce its rights, and to be compensated for its services. The defendants also copied the plaintiff's proprietary content and code (as they themselves admitted to the plaintiff in writing) in contravention of the plaintiff's intellectual property rights and violated the confidentiality provisions of the parties' contract. Despite its repeated breaches of its contractual obligations (many freely admitted to), the defendant, CondoDomain.com, LLC, continues to receive unjustly the benefits of the plaintiff's services in constructing and supporting multiple web sites. The defendant, Anthony J. Longo, Jr., the principal of CondoDomain.com, LLC, is sued in his individual capacity, because he made virtually all of the complained-of representations that the plaintiff relied on to its detriment and personally directed or caused the corporate defendant to breach its contractual and other obligations to the plaintiff. At the outset, the plaintiff seeks prejudgment relief including an attachment on trustee process of accounts owned and maintained by the defendants in the hands of the above-named trustees and a temporary restraining order restraining and enjoining the defendants from making any use of plaintiff's intellectual property (including the websites and content constructed by the Plaintiff, and any software supporting such website, as each may appear on CondoDomain.com, LLC's new website), and further enjoining and restraining the defendants from transferring, encumbering, or conveying any funds

outside of the ordinary course of business.  The plaintiff also seeks damages and other relief.

## Parties and Jurisdiction

2.      The Plaintiff, Dreaming Code, Inc. (hereinafter "**Dreaming Code**") is a Massachusetts corporation with a principal place of business located at 55 Temple Place, 2nd Floor, Boston, Suffolk County, Massachusetts. Akshay Vazirani (hereinafter "**Vazirani**") is a principal and officer of Dreaming Code.

3.      The Defendant, CondoDomain.com, LLC, (hereinafter "**Condo Domain**"), is, according to the records of the Massachusetts Secretary of State, a Delaware limited liability company with a principal place of business located at 319 A Street Front, Boston, Suffolk County, Massachusetts 02210.

4.      The Defendant, Anthony J. Longo, Jr. (hereinafter "**Longo**"), is an individual residing, upon information and belief, at 336 Commonwealth Avenue. Apt. BF, Boston, Massachusetts 02115.

5.      According to the records of the Massachusetts Secretary of State, Longo is the Manager of Condo Domain.

6.      Upon information and belief, Longo is a principal member of Condo Domain.

7.      The Trustee Defendant, Bank of America Bank N.A. is a national banking association with a usual place of business located in Suffolk County. Upon information and belief, the Trustee has in its possession certain goods, effects, and credits of the defendants.

## FACTS

8.    Dreaming Code is in the business of website development, software development, and web hosting, particularly for real estate brokerage companies.

9.    Condo Domain is an Internet-based discount real estate broker.

10.   In or about the fall of 2007, Condo Domain approached Dreaming Code and requested construction of a website for Condo Domain's Boston-based business, and a regular facility for hosting and maintaining the website.

11.   Thereafter, the parties entered into a written contract dated as of October 3, 2007 (the "**Boston Contract**"). A true and accurate copy of the Boston Contract is attached hereto and incorporated herein by reference as **Exhibit A.**

12.    Pursuant to Section 12 of the Boston Contract, Dreaming Code was to construct a website for use in Condo Domain's Boston market (the "**Boston Website**") for a flat fee of $15,000.00.

13.    Additionally, pursuant Section 12 of the Boston Contract, Condo Domain is obligated to pay to Dreaming Code monthly fees for web hosting, software licensing, software development, and technical support.

14.   The amount of Condo Domain's monthly fee obligation has varied from $1,500.00 to $3,000.00 per month, as set forth in greater detail below.

15.   Section 9 of the Boston Contract provides, in part:

> *Dreaming Code will allow condoDomain to use the Dreaming Code Real Estate Management System (netAgent) as a subscription service. The monthly service fees include the monthly licensing fees to use the Dreaming Code Real Estate Management System (netAgent). This system will allow condoDomain and those authorized from the company to add/update/delete existing images/content within a working framework design on the client site.*

*Dreaming Code alone (and its licensors, where applicable) shall own all right, title and interest, including all related Intellectual Property Rights, in and to the Dreaming Code Technology, the Content and the Service and any suggestions, ideas, enhancement requests, feedback, recommendations or other information provided by condoDomain or any other party relating to the Service. This Agreement is not a sale and does not convey to you any rights of ownership in or related to the Real Estate Management System, the Dreaming Code Technology or the Intellectual Property Rights owned by Dreaming Code.*

16.    Paragraph 11 of the Boston Contract incorporates a Confidentiality provision, which

provides, in part:

*By virtue of this agreement, the parties may have access to information that is confidential to one another ("Confidential Information"). Confidential Information shall include, but not be limited to, any information relating to the parties' respective business operations, products, processes…The parties agree, both during the term of this agreement and for a period of three (3) years thereafter, to hold each other's Confidential Information in confidence. The parties agree not to make each other's Confidential Information available in any form to any third party or to use each other's Confidential Information for any purpose other than the implementation of this agreement. Each party agrees to take all reasonable steps to ensure that Confidential Information is not disclosed or distributed by its employees or agents in violation of the provisions of this agreement.*

17.    Dreaming Code built the Boston Website to specification and otherwise performed

its obligations under the Boston Contract.

18.    The Boston Website was launched successfully on or about January 10, 2008.

19.    In January, 2008, the defendant, Longo, exclaimed to Vazirani about the virtues of,

and stated his overall satisfaction with, the Boston Website.

20.    Additionally, the newly-launched Boston Website was covered in press accounts.

One such review was as follows:

**The Money Blogs - January 18, 2008**
CondoDomain's First Week As Exclusive Buyers' Agency
Just a week ago, local company CondoDomain opened its doors as an exclusive buyers' agency. The company is run by Anthony Longo who, along with Christian Major, is committed to bringing the real estate profession into the 21st-century by

providing buyer clients with *cutting-edge technology* and exemplary service. At a low price. (emphasis added).

21.    The above-referenced review makes reference to "cutting edge technology," which was, in fact, designed and built by Dreaming Code.

22.    As a result of what Dreaming Code considered, at the time, to be a good working relationship with Condo Domain, and at Longo's request, Dreaming Code halved the monthly service and support fees charged to Condo Domain under the Boston Contract from $3,000.00 to $1,500.00 per month for the first six months of performance of the Boston Contract.

23.    Condo Domain made payments of $1,500.00 per month for the months of February 2008 through June 2008.

24.     Beginning with Dreaming Code's July 2008 invoice to Condo Domain, Condo Domain ceased paying Dreaming Code's invoices on a regular basis as required by the Boston Contract, and thereafter unpaid balances began to accrue.

25.    Notwithstanding its failure and refusal to pay Dreaming Code's invoices timely, Condo Domain was pleased with Dreaming Code's services.

26.    By email dated July 31, 2008, Longo wrote to Vazirani as follows: "I have wet dreams everynight…i love it so much… You guys should be selling this as a $25k install!!!!!! Everyone will want it!" A true and accurate copy of the July 31, 2008 email is attached hereto and incorporated herein by reference as **Exhibit B.**

27.    Shortly after the successful launch of the Boston Website, in or about February 2008, Condo Domain advised Dreaming Code that Condo Domain wished to expand the scope of the original website to target multiple cities.

28.   In or about February 2008, Condo Domain had requested that Dreaming Code begin expanding the scope of the Boston Website to have it cover multiple markets.

29.   In response, on or about February 4, 2008, Dreaming Code presented Condo Domain with a proposal for expanding the Boston Website to add additional cities.

30.   However, Condo Domain did not have sufficient capital to afford a system that would scale to up to 33 cities across North America, as was its intention.

31.   Accordingly, by email dated February 4, 2008, Longo offered to compensate Dreaming Code for work beyond the scope of the Boston Contract which would make the Condo Domain website more multidimensional and applicable to numerous other real estate markets beyond the original Boston market (the "**Expanded Website**").

32.   As a result of the Expanded Website, Condo Domain would be able to offer discount real estate services in many cities, and to have over 30 blogs for various cities on a single web platform.

33.   Longo proposed that Dreaming Code work on the Expanded Website in exchange for a ten per cent equity stake in Condo Domain.

34.   In response to Longo's proposal, Dreaming Code presented Condo Domain with a rollout plan to accomplish Condo Domain's goal of completing the Expanded Website, while at the same time keeping Condo Domain's initial costs to zero, as such costs were to be borne and absorbed by Dreaming Code in exchange for an equity stake.

35.   Dreaming Code's plan called for payment to Dreaming Code of an additional monthly fee for each newly added targeted city in the Expanded Website, upon the

launch thereof (in addition to the  original base monthly fee under the Boston Contract), together with the 10% equity ownership stake in Condo Domain offered by Longo.  Meanwhile, Condo Domain's monthly service fee obligation under the Boston Contract for web hosting and technical support for the original Boston Website remained in place.

36.    Dreaming Code calculated the value of the services it was to provide for the Expanded Website based on the number of hours it would need to devote to the project, plus its out of pocket costs.

37.    The parties agreed to the respective terms and conditions for Dreaming Code's work on the Expanded Website.

38.    Shortly thereafter, in or about February 2008, Dreaming Code began work on the Expanded Website.

39.    Work on the Expanded Website continued throughout 2008 and 2009 and new cities were steadily added to the Expanded Website.

40.    Dreaming Code also launched web blogs for each city. The platform for these blogs was created using a proprietary method developed by Dreaming Code.

41.    Throughout 2008, Condo Domain remained completely satisfied with the Boston Website and Dreaming Code's construction work on the Expanded Website.  For example, by email dated August 18, 2008, Longo, referring to Dreaming Code's work on the Expanded Website to target additional cities, sent an email to Vazirani stating: "We are in great shape….. lets launch Dallas!"

42.    At the same time, affirming Dreaming Code's exceptional performance under the Boston Contract and technological prowess (and thus Condo Domain's ability to

increase its web-based market share), on or about August 18, 2008, Condo Domain

transmitted a mass email to its clientele which stated in part:

*We are in running for most innovative real estate company!*

*http://www.inman.com/community/groups/alternative-business-models/2008/08/18/the-xxix-olympiad "*

As testimony to the high quality of Dreaming Code's work on the website, Condo

Domain won 'Silver' in the Inman News 2008 Pacesetter Real Estate Olympiad.

A true and accurate copy of this email is attached hereto and incorporated herein by

reference as **Exhibit C.**

43.   Dreaming Code built the entire system for the Expanded Site.  Dallas was the first

city to be added to the Expanded Website on September 11, 2008.

44.   On that same date, Longo sent out another mass email to his clientele representing:

"Inman [news service] picked us again," including a link to the Inman news article

about the launch of the Dallas site.

45.   Dreaming Code continued to work on the Expanded Website for the next several

months.

46.   As of the date of the within Verified Complaint, Condo Domain still makes use of

the core components developed by Dreaming Code that power both the Boston

Website and the Expanded Website, and derives revenue therefrom.

47.   Indeed, Condo Domain's entire business is based on its website, which website was

constructed by Dreaming Code and for which Condo Domain (by its own numerous

admissions) agrees it has not paid.

48.   By email dated August 18, 2008, Condo Domain transmitted another message to Dreaming Code, which stated, in part: "We need to finalize our contracts and your equity and split our responsibilities...." A true and accurate copy of the August 18, 2008 email is attached hereto and incorporated herein by reference as **Exhibit D.**

49.   Longo's reference in the August 18, 2008 email (Exhibit D hereto) to "your equity split," was intended to induce Dreaming Code to continue working on Condo Domain's Expanded Website in exchange for the previously negotiated and agreed equity position in Condo Domain in lieu of cash payments therefor.

50.   However, Condo Domain's payment obligations under the Boston Contract for web hosting, licensing and technical support remained in place, and Condo Domain remained delinquent thereunder.

51.   By email dated August 19, 2008, Vazirani requested that Condo Domain bring current its outstanding balances with Dreaming Code.

52.   In response, by email dated August 19, 2008, Longo wrote to Vazirani:  "Should not be an issue...Ill review on Thursday come drop off."

53.   By email dated August 28, 2008, Dreaming Code again requested Condo Domain to bring its account current.

54.   By email dated September 5, 2008, Longo responded: "Working on it for ya bud...doing month end stuff Monday. See u at 11 bitch."

55.   As of September 6, 2008, Condo Domain's monthly fee obligation for web hosting services under the Boston Contract was due to revert to the original schedule of $3,000.00 per month.

56.     Although Condo Domain remained delinquent under the Boston Contract, Dreaming Code continued to provide services to Condo Domain thereunder and continued aggressively to work on the Expanded Website in reliance on Condo Domain's and Longo's promises of future payment.

57.     By email dated September 6, 2008, Longo, attempting to explain his company's failure to keep its account with Dreaming Code under the Boston Contract current wrote: "I am working on it best I can…Not an excuse...believe me...can show you on paper you will understand...if 2nd market launched June 22nd per our spreadsheet..would be in much different position…" Longo also intimated that there were investors (unnamed) prepared to make a major capital infusion in Condo Domain, as a result of which, Dreaming Code would be paid for its work and past due balances. A true and accurate copy of the September 6, 2008 email is attached hereto and incorporated herein by reference as **Exhibit E**

58.     During this period, Dreaming Code delivered several reminders and invoices to Condo Domain, and Condo Domain continued to promise payment.

59.     By email dated September 16, 2008, Dreaming Code transmitted another request to Longo to "please be sure to bring in the check for the past months."

60.     That same day, by email dated September 16, 2008, Longo responded: "We had this conversation last week akshay...i wont see funds till months end"

61.     Vazirani responded with another email dated September 16, 2008, which stated, in part:

*we need to put the monthly recurring on a credit card/amex. just like I have mine on*
*rackspace. I understand what you had emailed me but we need to resolve this item.*
*the monthly recurring has to be dealt with as a separate line item. I hope you*

*understand where I am coming from.   its like your x5 = whether you fill it with gas OR not = you need to pay for it on a monthly basis. (is that a bad example)  :)*

62.   Longo responded with yet another email also dated September 16, 2008, which admitted his company's breach of its payment obligations in part, as follows:

*...I need to be open in more markets to pay for this...i have shown you the proformas. Why are we having this conversation again...it depresses me and upsets me that the company owes you hosting fee's...its reality for BOTH of us. ...*

63.   Later the same day, Longo transmitted another message to Vazirani, acknowledging his company's failure to pay Dreaming Code sums it was owed:

*I do know that...and it upsets me (not you, just me being behind upsets me) just the fact of being behind kills me. You will be paid in full PLUS!! I promise you and I understand if we need to suspend service until that piont.  I totally respect that if it needs to be...if we can populate 4-5 cities I can increase rev in 30-60 days and catch up before we progress if that's better for you & DC....im totally open to all/any ideas to catch up.  i feel like shit that im in this situation and putting you in that sistuation. I promise its temporay.. Bottom line is that boston costs me 30k per month to operate (before tech costs)....we make 20-40k per month(just started too)...so im finally getting in green...but when I open market 2 (dallas)...it costs me no more money..same with #3, #4 and #5..its all green from there...and I can pay up the balance owned..and pay down amex biz acct enough to take on the montly re-accuring no sweat.  We are VERY Close...i mean very...just need to  open 2-3 more cities and RUN THEM for 30 days and im there...with moretgage and title fees alone.*

64.   A true and accurate copy of the above-referenced emails are attached hereto and incorporated herein by reference as **Exhibit F**.

65.   Based in large part on Condo Domain's continued promises of payment, Dreaming Code continued to work on the Expanded Website and continued to make changes and additions therefor.

66.   By email to Vazirani dated October 13, 2008, referring to the fact that the Expanded Website was now able to scale across 33 cities, Longo exclaimed: "THE SITE IS DONE!!!! I LOVE TODAY!"

67.   Thereafter, following a series of communications from Longo to Vazirani, in which Longo consistently reaffirmed Condo Domain's debt under the Boston Contract and promised to pay it, Longo sent the following communication to Dreaming Code by email dated December 23, 2008:

   *Lets set up a meeting for 2009 for us.*
   *I need to get the contract to you as long overdue ...and a credit card auto-payment setup with you guy too...and give you my 2009 repayment play for your very generous 2008 funding.*

68.   Longo's reference to "generous 2008 funding" in the above-referenced email was a confirmation that Dreaming Code had been building the Expanded Website with no compensation from Condo Domain and that Dreaming Code had extended grace periods to Condo Domain for payment of the monthly service fees.

69.   As of February 2009, Condo Domain had promised Dreaming Code that Condo Domain would retire outstanding balances partly with credit card auto debits, and partly with checks. During this time, Longo continued to represent to Vazirani that Condo Domain would pay down its debt to Dreaming Code as it processed more real estate closings.

70.   During the same period in February 2009 that Longo was promising Dreaming Code that it would pay down its debt under the Boston Contract, he was requesting additional changes to the Expanded Website and suggesting to Dreaming Code that work thereon would facilitate payment to Dreaming Code.

71.     As of February 2009, Dreaming Code had already built out the Expanded Website and had worked thereon for the past 13 months. During the same period, Condo Domain had tendered no monies whatsoever for Dreaming Code's work on the Expanded Website and had not met any of its payment obligations for the monthly fees due for web hosting and technical development under the Boston Contract.

72.     By email dated March 17, 2009, well over a year after Dreaming Code had already substantially built the Expanded Website, Longo transmitted to Vazirani written terms for Condo Domain's transfer of an equity share to Dreaming Code as payment for Dreaming Code's past and anticipated future services on the Expanded Website, which he had first promised in February 2008. Longo wrote:

*Akshay I formulated a one pager I want to edit with you…so when we pass it on to Dryer he can draw up all the legal docs quickly so this wont cost us much $$$ to create.*

*Lets nail this down over the next few days so I can give to David [Dryer – Condo Domain's attorney] and get you final "legal docs" for your attorney to review.*

73.     Longo's "one pager" (the **"Equity Conversion Document"**) is entitled "(Updated 3/17/09) Akshay Equity/Conversion Draft Guidelines. 10% Equity Stake in CondoDomain.com LLC." The document provides, in part:   "Front End development & Database Management – Completed – 5% Equity."  The document also provides: "Back End Development – Not Complete – 5% Equity." A true and accurate copy of the Equity Conversion Document is attached hereto and incorporated herein by reference as **Exhibit G.**

74.     Pursuant to the Equity Conversion Document, Longo admitted to Vazirani that Dreaming Code had already earned a five per cent (5%) equity stake in Condo Domain by virtue of its work on the Expanded Website.

75.   Pursuant to the Equity Conversion Document, Longo and Condo Domain requested Dreaming Code to continue to do additional "back end development" work for Condo Domain on the Expanded Website for consideration of an additional five per cent (5%) of equity in Condo Domain.

76.   The Equity Conversion Document also represents as follows:

**Outstanding Balance(s)**

1.   CondoDomain has a priority to pay down all outstanding balances it has with Dreaming Code over the course of the year.  If for any reason there is a sale or acquisition, Dreaming Code balances (if any) are to be paid first.

**Ancillary/Roles**

1.   Dreaming Code to become a public figure as our exclusive web partner

2.   Akshay Vazirani to become a member of the Board of Directors.

77.   Based, in part, on the representations and promises made in the Equity Conversion Document, Dreaming Code continued to work on the Expanded Website for Condo Domain as Longo had requested.

78.   As of March 17, 2009, Dreaming Code had already completed in excess of 1,000 person hours of work on the Expanded Website for Condo Domain and as of this date Condo Domain had activated the Expanded Website in 19 cities.

79.   Over the next several months, Condo Domain continued to make intermittent partial payments under the Boston Contract, and it also continued to make use of the Expanded Website developed by Dreaming Code.

80.   However, Vazirani grew increasingly concerned as Condo Domain continued to break its payment obligations under the Boston Contract.

81.   By email dated July 29, 2009, Vazirani wrote to Longo:

*Hi T,*

*Please note;*

*The deal we had in place was that you start paying us $3k per month.  Of the $3k, you had requested we keep adding $1.5k of that to the debt that keeps adding up.*

*Starting next month, Dreaming Code is no longer in a position to afford ConfoDomain to keep adding to the burgeoning balances. We will be invoicing you $3k per month and this is the exact amount that will need to be charged to your Amex.*

*Note: We need a check or a payment on the past balances within the next week as no monies have be [sic] paid towards the old balances that continue to grow…*

82.   Longo responded the same day by email, in part, as follows;

*I can get on hard schedule for 2008 repayment – if you give me a week to look at our balances and revenue coming in will be able to make accurate promises for repayment.*

True and accurate copies of the July 29, 2009 emails are attached hereto and

incorporated herein by reference as **Exhibit H.**

83.   Reasserting his promises and representations made in the Equity Conversion

Document, Longo wrote to Vazirani by email dated September 22, 2009:

*Everything is getting drawn up, contracts, relationship, pay down, equity docs, and I want you to meet Chancellor [Peterson] as he is running all our budgets now, etc and we have a ferw design upgrades we need quotes on…*

A True and accurate copy of the September 22, 2009 email is attached hereto and

incorporated herein by reference as **Exhibit I.**

84.   Vazirani and Longo met in October 2009 to discuss the mechanics of the equity

transfer.  At this meeting, Longo, for the first time, appeared to retreat from the

positions he had previously set forth in writing, which the parties had already agreed

to, and pursuant to which, Dreaming Code had been providing substantial, sophisticated, technological services for well over a year.

85.    Accordingly, Vazirani summed up his position in an email to Longo dated October 27, 2009, in which he reminded Longo that the parties had an agreement in place for a 10% equity stake in Condo Domain in exchange for Dreaming Code's work on the Expanded Website. Vazirani also reminded Longo that Dreaming Code did, indeed, launch the Condo Domain Expanded Website in multiple cities as promised, with appropriate technology, at a cost of hundreds of thousands of dollars subsidized by Dreaming Code.

86.    In his email response of the same day, Longo tried to back away from some of the commitments he had already made to Vazirani, while, at the same time admitting the parties' agreement.   A true and accurate copy of the October 27, 2009 email exchange is attached hereto and incorporated herein by reference as **Exhibit J.**

87.    As of November 30, 2009 Longo acknowledged that Condo Domain's outstanding monthly hosting fees under the Boston Contract were $30,500.00.

88.    By email dated December 8, 2009, Longo again promised that Condo Domain would pay off the balances owed to Dreaming Code. He wrote:

*Confidential - I am gtting a $35M listing in NYC (I Know nuts) – commission is 1.8M (split in 2 of course)*

*I can not wait to pay you off in full so the people who work there like me again!*

A true and accurate copy of the December 8, 2009 email is attached hereto and incorporated herein by reference as **Exhibit K.**

89.   Condo Domain's promised windfall did not materialize, and its balances with Dreaming Code continued to grow.

90.   As of January 2010, with his company in debt to Dreaming Code for nearly $40,000.00 in monthly support fees (and excluding amounts owed for the work on the Expanded Website), Longo, himself, continued to live a lavish life in New York City. From December 28, 2009 to January 4, 2010, he vacationed in Geneva, Switzerland.

91.   Longo also confided in Vazirani that Condo Domain was making use of Microsoft proprietary products for which Condo Domain was not paying.

92.   In March 2010, Condo Domain requested that Dreaming Code stop the practice of charging Condo Domain's American Express account, because Condo Domain could not pay its credit card bill.

93.   On April 1, 2010, Longo and Vazirani met to discuss Condo Domain's outstanding balances. During this meeting, Longo asserted that Condo Domain would no longer pay Dreaming Code on a monthly basis, and needed additional time to pay down past balances.

94.   As of April 2, 2010, Dreaming Code decided to cease work on any web development for Condo Domain, and limited its services to hosting the Condo Domain website under the Boston Website.

95.   As of April 2010, Dreaming Code calculated that the value of the services provided for construction of the Expanded Website was approximately $150,000.00 based upon a conservative estimate of 1,500 hours at a discounted hourly rate of $100 per hour.

96.  If Dreaming Code had not agreed to the discount, the rate would have been $150 per hour.

97.  The actual value of the work for the Expanded Website, therefore, is closer to $225,000.00.

98.  As Condo Domain paid nothing for the Expanded Website, Condo Domain forfeited its right to receive the discount rate for work therefor.

99.  As of the date of this Verified Complaint, Condo Domain owes Dreaming Code an amount not less than $225,000.00 for the development costs for the Expanded Website.

100.  Additionally, Condo Domain is obligated to pay Dreaming Code a monthly subscription and licensing fee for each additional city in the Expanded Website at the blended discounted rate of $250 per month per activated city from the date of the launch of each such city.

101.  As of the date of this Verified Complaint, Condo Domain has activated 19 cities under the Expanded Website.

102.  As of the date of this Verified Complaint, Condo Domain owes Dreaming Code (in addition to the other amounts set forth herein) an additional $57,000 for the subscription fees referred to in the above-referenced paragraph.

103.  The above-referenced figure is calculated by taking the number of activated cities (19) multiplied by the blended discounted rate of $250 per month running from May 1, 2009 to May 1, 2010.

104.  Condo Domain paid only for minor change orders and cosmetic upgrades for the Expanded Website.   However it has not paid its monthly service fees, the

development costs borne by Dreaming Code for the core functionality of the entire Expanded Website and the more than 30 blogs that are associated with the city sites.

105.   In fact, each separate city and affiliated blog constitute two separate websites. Accordingly, as of May 2010, Dreaming Code had developed, built, maintained, and hosted over 60 websites for Condo Domain.

106.   Although Dreaming Code had provided Condo Domain the facility to activate 33 cities pursuant to the Expanded Website, as of May, 2010, Condo Domain had activated only 19.

107.   Condo Domain began to use the Expanded Website and to benefit from it, and has been using and benefiting from the core components that power it since as early as October 2008.

108.   Attached hereto and incorporated herein by reference as **Exhibit L** is a screenshot from the current Condo Domain Website advertising multiple markets, the Web platform for which was developed by Dreaming Code.

109.   On April 5, 2010, Longo left the following message on Vazirani's voicemail system:

Hey Akshay, kind of awkward call from Anne this morning. Listen, I know you left the office last week and I hope that I saw you at Joe's that things are a better, but I guess not. It's kind of odd. Ah, I know you got a new family, you don't like stress. I hate stress, made a comment about the Kevin Ahearn thing. You and I can figure out whatever you want to figure out and get this thing squared away today if you want. You know me, I am more than reasonable and I'm going to take care of everything that needs to be taken care of, give me a buzz back. I hope my thought in my head is not what is flashing in there right now. Give me a buzz and lets this squared away and if it's the past due balance thing that needs to get taken care of dude, I'll take care of it today, if I have to! I'll just pull together a credit card to you and wipe it out and go from there. So, give me a buzz let me know whats best and you and I can talk.

110.  As Condo Domain's debt to Dreaming Code grew, Longo continued to make
      excuses for Condo Domain's failure to pay its bills to Dreaming Code.  These
      ranged from: inadvertence, to the fact that his mother was on vacation, to the fact
      that his mother was in Florida [how this interfered with payment was not explained],
      to the representation that his father had had a heart attack. (As of the date of the
      within Verified Complaint, upon information and belief, Longo's father is alive and
      well).

111.  In early May, 2010, Longo promised to deliver a check to Dreaming Code to pay
      down existing debt to Dreaming Code. He also claimed that his father would make
      the payment if Condo Domain could not come up with the funds.

112.  The above-referenced representation was made as a deliberate attempt to buy time to
      enable Condo Domain to transfer the content of the Expanded Website to a third
      party host without notice to Dreaming Code.

113.  Shortly thereafter, without notice to Dreaming Code and in violation of the thirty-
      day notice requirement under the Boston Contract, Longo caused the entire Condo
      Domain website to be relocated to a third party hosting company.

114.  On May 8, 2010, Longo delivered a lengthy email to Vazirani, which was in sharp
      contrast (and in fact contradicted Longo's voicemail of April 5, 2010 and his early
      May representations about payment). The May 8, 2010 email; represented in part, as
      follows:

      *Akshay –*

      *As you know you the relationship between Dreaming Code and my company has
      gone on with un-due stress over the past year but most recently (the past month) has
      escalated to levels of verbal threats of you shutting down my website and "crushing
      me".  With such threats and for the well being of my entire company, and the well*

*being of our employees, I needed to take drastic actions and begin rebuilding our entire website offline which has costs me hundreds of hours and thousands of dollars...*

*...Now that I am no longer handcuffed to your company, your backend system or your services, I can finally tell you all of this.*

*Our new site should be launched within the next few days. As you can imagine I am neck deep in development with this project as I have been for the past 3 weeks, more than 18 hours per day. I do acknowledge we still have an outstanding balance with you in which we WILL pay as that is how I operate as an honest and fair business person. We will also pay a prorated amount for our hosting for the month of May from May 1 to today May 7th...*

*...Last note. Just so you know and you don't try to strong-arm me one last time. I have made a complete copy of our website(s) and blog(s). The exact duplicate "offline" copy site sits next to me on an external hard-drive safe from web-attacks by hackers.*

*Happy to meet in Boston or do a phone call and transfer these file – which ever is best - and of course satisfy final payments to DreamingCode....*

A true and accurate copy of the above-referenced email is attached hereto and incorporated herein by reference as **Exhibit M.**

115. Longo's assertion that he was "handcuffed" to Dreaming Code is false. Nothing in the agreements between the parties required Condo Domain to use Dreaming Code as an exclusive content and support provider. Condo Domain has, however, always been obligated to compensate Dreaming Code for these services, and has been free to relocate Dreaming Code's website and content and to use it, provided that it paid for it, which it has failed and refused to do, despite Longo's repeated admissions, including in the above-referenced email, that Condo Domain is indebted to Dreaming Code for the work.

116. In the above-referenced email, Longo also made numerous demands that Dreaming Code "transfer" content to Condo Domain that Longo claimed Condo Domain

owned, despite the fact that Condo Domain had not paid Dreaming Code anything

for the core system that drives the entire functionality of the Expanded Website for

the last year and a half, as Longo had repeatedly promised.

117.    Condo Domain's *de facto* unilateral termination of the Boston Contract was in

violation of Section 10 thereof, which provides, in part:

> *condoDomain may terminate this Agreement at any time by giving thirty (30) days'*
> *written notice to Dreaming Code.  In the event of termination by condoDomain,*
> *condoDomain agrees to pay for all services performed under this Agreement prior*
> *to termination.  A termination by condoDomain shall not be deemed to have been*
> *made unless it is in writing and delivered to Dreaming Code at its address set forth*
> *on page one hereof.  In the event of termination by condoDomain, the parties agree*
> *that* [assuming Condo Domain has not breached its obligations] *Dreaming Code*
> *shall not remove or alter any content from condoDomain's website which exists at*
> *the time of termination.  condoDomain will receive all html website files on a CD.*

118.    By letters dated May 9 and 10, 2010, Dreaming Code, through counsel, made

demand on Condo Domain for payment.   True and accurate copies of this

correspondence are attached hereto and incorporated herein by reference as **Exhibit**

**N.**

119.    By email dated May, 9, 2010, Longo responded to counsel, in part, as follows:

> *Bob got your note.  Happy to discuss and rid of this situation  however priority #1 is*
> *getting my company back online so it will not be  before then.  Hopeful your client*
> *will release all code, content, multimedia, etc that is owned by me (and paid in full)*
> *in the next 24 hours otherwise I don't think we have anything to talk about.*
> *Eveerything is based upon recieving all content owned and currently held  by your*
> *client and also destoyed after recipt as your client has most recently  been caught for*
> *distributing privately owned content for competeing real  estate clients to other*
> *dreaming code customers and I want to insure he does  not do this  with my content.*
> *7*

A true and accurate copy of this email is attached hereto and incorporated herein by

reference as **Exhibit O.**

120.   Thus, although Condo Domain had continued to use Dreaming Code's website content and support services for well over two years, and had, through Longo, made numerous representations about paying for same, and had promised an equity stake in Condo Domain, none of which Condo Domain delivered or fulfilled, Condo Domain was now demanding immediate access to content that it had not paid for and had no apparent intention of paying for, and was threatening unspecified "action" against Dreaming Code.

121.   Moreover, pursuant to Section 9 of the Boston Contract, Dreaming Code, and not Condo Domain, owns all Intellectual Property Rights, in and to the Dreaming Code Technology, including the software and code that operates the Condo Domain website for which Condo Domain has failed and refused to pay, and which it has now transferred to a third party host.

122.   Condo Domain presently has no rights whatsoever to use any of the content or design for the Expanded Website it relocated.

123.   As of the date of the within Verified Complaint, Condo Domain is indebted to Dreaming Code in an amount not less than $322,000 for website development, web hosting services, licensing fees and technical support under the Boston Contract and for the products and services provided for the Expanded Website, all of which amounts have been invoiced to Condo Domain.

124.   Despite multiple verbal and written demands, Condo Domain has failed and refused to pay amounts due to Dreaming Code, but has continued to use Dreaming Code's proprietary intellectual property.

## CAUSES OF ACTION

### Count One – Breach of Contract

(against Condo Domain)

125.   The Plaintiff re-alleges all previous paragraphs of this Verified Complaint and incorporates them herein by reference.

126.   Dreaming Code and Condo Domain entered into one or more valid contracts for good and valuable consideration pursuant to which Dreaming Code provided web development and web hosting services to Condo Domain and Condo Domain promised and was obligated to pay for same.

127.   Dreaming Code performed fully under the contracts.

128.   Condo Domain breached the contracts by, among other things, failing and refusing, despite demand, to pay amounts due thereunder, by misappropriating Dreaming Code's proprietary information, and by breaching the confidentiality provision of the Boston Contract.

129.   As a result of Condo Domain's multiple breaches of the contracts, Dreaming Code has been damaged.

### Count Two
(Breach of the Covenant of Good Faith and Fair Dealing)

(against Condo Domain)

130.   The Plaintiff re-alleges all previous paragraphs of this Verified Complaint and incorporates them herein by reference.

131.   The contracts between Dreaming Code and Condo Domain incorporate covenants of good faith and fair dealing implied in fact and under law.

132.   Condo Domain breached the covenants of good faith and fair dealing by among other things: using Dreaming Code's content and services without paying for same, making repeated false representations intended to cause Dreaming Code to forbear from enforcement and collection action, and making, without right, unspecified threats against Dreaming Code.

133.   As a result of Condo Domain's breaches of the covenants of good faith and fair dealing, Dreaming Code has been damaged.


Count Three
(Misrepresentation)

(against Longo and Condo Domain)

134.   The Plaintiff re-alleges all previous paragraphs of this Verified Complaint and incorporates them herein by reference.

135.   Longo, on behalf of Condo Domain, made numerous misrepresentations of fact to Dreaming Code and Vazirani, including, but not limited to the following: (1) that Condo Domain would pay for web hosting services and web development; (2) that Condo Domain was on the verge of closing major deals or receiving capital infusions that would enable Condo Domain to pay down its debt to dreaming Code, and; (3) that Condo Domain would compensate Dreaming Code with an equity stake in Condo Domain.

136.   The aforesaid representations were not true when made, but Longo made them repeatedly with the intent that Dreaming Code and Vazirani rely on them so that

Dreaming Code would continue to provide services and products to Condo Domain, and so that Condo Domain could continue to use them without paying for same.

137. Dreaming Code reasonably relied on the aforesaid representations to its detriment.

138. As a result thereof, Dreaming Code has been damaged.

Count Four
(Unjust Enrichment)

(against Condo Domain)

139. The plaintiff restates and incorporates herein by reference all previously pled allegations of this Complaint.

140. Condo Domain was unjustly enriched at the expense of dreaming Code in that it received the benefit of, and continues to use, web hosting services and web development for which it has failed and refused to pay.

141. The fair value of such services is not less than $225,000.00 (for the development of the Expanded Website) plus $57,000.00, (for the subscription fees under the Expanded Website), plus $40,000.00 (for the monthly service and hosting fees under the Boston Contract), exclusive of interest, costs, and attorneys' fees.

142. As a result thereof, Dreaming Code has been damaged.

Count Five
Quantum Meruit

(against Condo Domain)

143. The plaintiff restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

144.  Condo Domain, through its representations and promises to Dreaming Code induced Dreaming Code to perform services and provide products to Condo Domain.

145.  Dreaming Code did provide such services and products to Condo Domain.

146.  Condo Domain received the full value of the services and products provided by Dreaming Code, but did not compensate Dreaming Code in full for same.

147.  The fair value of such services is not less than $225,000.00 (for the development of the Expanded Website) plus $57,000.00, (for the subscription fees under the Expanded Website), plus $40,000.00 (for the monthly service and hosting fees under the Boston Contract), exclusive of interest, costs, and attorneys' fees.

148.  Condo Domain has failed and refused to pay Dreaming Code for the fair value of such services.

149.  As a result whereof, Dreaming Code has been damaged.

Count Six
Conversion/Misappropriation

(against Condo Domain)

150.  Dreaming Code restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

151.  Condo Domain has, without privilege or right, converted to its own use, money, material, and other property, including, but not limited to the proprietary content, design, files, software and code that operates the Condo Domain website belonging to the plaintiff.

152.  By misappropriating Dreaming Code's proprietary content, Condo Domain has breached the confidentiality provision of Section 11 of the Boston Contract.

153.  As a result thereof, Dreaming Code has been damaged.

29

Count Seven
Violation of M.G.L. ch. 93A, sec. 2 and 11

(against Condo Domain)

154.  Dreaming Code restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

155.  Dreaming Code and Condo Domain are engaged in trade or commerce.

156.  The actions and representations of Condo Domain complained of herein constitute unfair and deceptive business practices in violation of Massachusetts General Laws, chapter 93A, sections 2 and 11, and proscribed by the Massachusetts attorney general.

157.  The actions and representations of Condo Domain complained of herein were knowing and willful violations of said M.G.L. ch. 93A, sections 2 and 11.

158.  The acts and practices complained of herein occurred primarily and substantially in the Commonwealth of Massachusetts and/or were directed at commerce in Massachusetts and were intended to and did and cause economic harm in Massachusetts.

159.  The aforesaid unfair acts and practices have caused Dreaming Code a loss of money and/or property, including but not limited to lost profits, attorneys fees and other damages.

Count Eight
Violation of M.G.L. ch. 93A, sec. 2 and 11

(against Longo)

160. Dreaming Code restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

161. As a corporate officer and principal of Condo Domain, and as the person who orchestrated, directed, caused, and effectuated Condo Domain's multiple misrepresentations, breaches of promise, and contractual violations, Longo has individual liability under M.G.L. chapter 93A, section 11.

162. The actions and representations of Longo complained of herein constitute unfair and deceptive business practices in violation of Massachusetts General Laws, chapter 93A, sections 2 and 11, and proscribed by the Massachusetts attorney general.

163. The actions and representations of Longo complained of herein were knowing and willful violations of said M.G.L. ch. 93A, sections 2 and 11.

164. The acts and practices complained of herein occurred primarily and substantially in the Commonwealth of Massachusetts and/or were directed at commerce in Massachusetts and were intended to and did and cause economic harm in Massachusetts.

165. The aforesaid unfair acts and practices have caused Dreaming Code a loss of money and/or property, including but not limited to lost profits, attorneys fees and other damages.


**PRAYERS FOR RELIEF**


WHEREFORE, the Plaintiff prays that this Court:

a.      Enter an order, *ex parte,* allowing an attachment on trustee process of all goods, effects, or credits of Condo Domain and Longo in the possession of the above-named trustee to the value of $350,000.00;

b.      Enter a Temporary Restraining Order, and, after hearing, a preliminary and permanent injunction, enjoining the Defendants, CondoDomain.com, LLC. and Anthony J. Longo, Jr., and any person acting or purporting to act on behalf of said defendants, and those persons in active concert or participation with the Defendants who receive actual notice of the order, from transferring, encumbering or conveying any of said Defendants' property of any kind (including, but not limited to, membership interests in Condo Domain), other than in the ordinary course of business;

c.      Enter a Temporary Restraining Order, and, after hearing, a preliminary and permanent injunction, enjoining the Defendants, CondoDomain.com, LLC. and Anthony J. Longo, Jr., and any person acting or purporting to act on behalf of said defendants, and those persons in active concert or participation with the Defendants who receive actual notice of the order, from making any use whatsoever of the software and code that operates the Condo Domain website;

d.      Enter judgment for Dreaming Code and against Condo Domain on Counts One through Eight of this Verified Complaint in an amount to be determined by the Court;

e.      Pursuant to Count Seven, if the Court finds a knowing and willful violation of ch. 93A, treble such award of damages against Condo Domain and award Dreaming Code its reasonable attorney's fees, costs, and interest at the statutory rate;

f.      Enter judgment for Dreaming Code and against Longo on Counts Three and Eight of this Verified Complaint in an amount to be determined by the Court;

g.      Pursuant to Count Eight, if the Court finds a knowing and willful violation of

ch. 93A, treble such award of damages against Longo and award Dreaming Code its

reasonable attorney's fees, costs, and interest at the statutory rate;

h.      Enter such further relief as the Court deems equitable and just

## JURY DEMAND

The plaintiff hereby demands trial by jury on all issues so triable.

Dreaming Code, Inc.

By its attorneys

_Seth H. Salinger_
Seth H. Salinger (BBO #555426)
53 Langley Road
Suite 270
Piccadilly Square
Newton, MA 02459
Telephone # (617) 244-7630
Fax # (617) 244-7640
Sethsal@gmail.com

_Robert Keough_
Robert Keough (BBO #564535)
CUMSKY & LEVIN, LLP
6 University Road
Cambridge, MA  02138
Telephone # (617) 492-9700
Fax # (617) 492-9020
RKeough@CumskyLevin.Com

Dated June _10_, 2010

## VERIFICATION

I, Akshay Vazirani, the Principal of the plaintiff herein, hereby certify that I have read the foregoing Complaint; all of the allegations contained therein asserted on personal information are true, and all of the allegations made upon information and belief, I believe, upon reasonable investigation, to be true.

Signed under the pains and penalties of perjury this 10th day of June 2010.

_____
Akshay Vazirani

35

# condoDomain.com Website Initiative
## Discovery Document
## October 2, 2007

**Contact Information**

For questions regarding this proposal please contact:

Akshay Vazirani
Chief Technical Consultant
55 Temple Place, 2nd Floor
Boston, MA 02111

Phone: 617.820.5195 ext. 203
Fax:    617.687.7731
E-mail: vazirani@dreamingcode.com

*Statement of Confidentiality*

The information contained in this document is privileged and confidential.  Dreaming Code, Inc. submits this document to condoDomain with the understanding that it will be held in the strictest of confidence by condoDomain, its employees, associates, agents and assignees.  This document will not be disclosed, duplicated in any manner, or used, in whole or in part, for any purpose other than the sole evaluation of Dreaming Code, Inc's qualifications for the proposed project.  Any disclosure, duplication, or use, in whole or in part of this document, may only be obtained with the prior written consent of Dreaming Code, Inc.

*Contact Information*

For questions regarding this proposal please contact:

Akshay Vazirani
Chief Technical Consultant
55 Temple Place, 2ⁿᵈ Floor
Boston, MA 02111

Phone: 617.820.5195 ext. 203
Fax:    617.687.7731
E-mail: vazirani@dreamingcode.com

## WEBSITE DESIGN/DEVELOPMENT & REAL ESTATE MANAGEMENT SUBSCRIPTION AGREEMENT

This Discovery Document (including all Exhibits and Proposals) is applicable between Dreaming Code, Inc. and condoDomain.

## 1. Company Profile

Dreaming Code offers a full range of professional services and web software solutions for businesses across various industries. Our goal is to enable our clients to gain a competitive advantage in their markets by deploying our customized technology solutions. We aim to maximize our client's investment and allow them to capitalize on the ever increasing revenue opportunities of eCommerce & other value added technologies.

### Dreaming Code Service Offerings

*Creative & Marketing Services*

- Custom Website Design
- Custom Flash Design
- Custom Intranet Design
- Branding & Corporate Identity
- Information Architecture
- Search Engine Optimization
- Copywriting/Proofreading
- Internet Marketing (website promotion/advertising)

*Technical Services*

- Customized Content Management Software
- Content Migration
- Customer Intranet Solutions
- Website development
- Database Development
- Customized E-commerce Applications
- Website Maintenance/Hosting
- E-mail Hosting
- Website Traffic Reporting

For the past seven years, we have provided enterprise-level, web based business software solutions to our clients. Dreaming Code fully designs and develops these customized web based software applications as well as aiding clients with implementation, maintenance, hosting, training, support and internet marketing.  In the internet marketing sector, Dreaming Code specializes in a combination of organic/algorithmic Search Engine Optimization (SEO), Pay-Per-Click (PPC) advertising campaign management and Data Feed Marketing.

Dreaming Code provides the most comprehensive and cost effective Internet enabled software solutions to small and medium size businesses. We supply dynamic software & structured database solutions previously available only to large-scale businesses, while maintaining the highest level of customer satisfaction possible at a fraction of the cost.

## 2. Project Overview

### 2.1 Project Approach

condoDomain has approached Dreaming Code to design/develop a brand new, cutting edge website. Based upon prior discussions with condoDomain, Dreaming Code understands that its overall goal for this project is to assist condoDomain, where appropriate, in meeting and exceeding the following overall business objectives:

> - Recruit and Retain Quality Clients
> - Increase Sales (Return on Investment)
> - Expand industry exposure
> - Portray an image of professional, trustworthy and established

- ➤ Professional, clean look and feel
- ➤ Present an engaging, intuitive interaction with clear paths for audience types
- ➤ Ease of use enabling customers to easily find the information they are requesting and creating a pleasurable business experience for visitors (structured information architecture)

In Dreaming Code's experience, the best way to achieve these goals is to:

- ➤ Identify and prioritize the requirements
- ➤ Develop a robust design based on the requirements
- ➤ Develop and test the site
- ➤ Deploy the site

## 2.2 Project Details

Dreaming Code proposes to conduct a discovery phase for the design/development of the CondoDomain.com website. The new layout and design will have a touch of the traditional elements of a real estate site with branding elements to assist in building the condoDomain brand. Dreaming Code wishes to work closely with the team at condoDomain throughout the discovery phase/design process to insure the look and feel as well as the functionality are compatible with the requirements of the company before moving on to development.

Dreaming Code proposes to design/build a brand new website for CondoDomain.com using state-of-the-art web technologies. condoDomain shall have the ability to add photos/listings/descriptions/content/documents to the website using the Dreaming Code Real Estate Management System (netAgent). The system will allow non-technical users to keep the website up-to-date. The layout and design will have a professional, yet extremely intuitive, user-friendly look and feel.

condoDomain will work with one of our in-house designers who will consult with you and create a mockup framework design for you. After a second consultation, our designer will provide you with additional hours of design time to further customize that framework to your liking.

Once your framework is complete, you will have the ability to use the Dreaming Code Real Estate Management System to add/update/delete listings/photos/content to your website at any time from any computer. The final content areas will be determined after the "Discovery Phase" but we assume the proposed website will feature the following content areas:

1) Homepage
- Attractive "embedded flash" if desired or a simple photo
- Clean and simple navigation bar
- Welcome page content on Boston Condos and Boston Real Estate
- Sub-navigation including "learn how to buy" and "learn how to sell"
- Bottom Sub-navigation including "About condoDomain, Buy with Us, Sell with Us, Add a Condo Project, Disclaimers, Sitemap, Contact Us"
- City drop down enabling visitor to select their city
- Quick Search enabling visitor to quickly search for property (searches MA MLS, New Developments, FSBO listings and blog database for "like terms") - will not search blog
- How It Works – basic text, graphics on how condoDomain system works – static content
- Multi-tab call-out with New Developments, Featured Development listings, FSBO listings and MA MLS tabs (enables visitor to view sample properties as well as search box)
- Agent Profile call-out -- contain link to text, videos and contact form
- Experience The Boston Condo Market -- still images of someone talking on video with link to watch the newest videos.
- Recent Comments in Boston – auto feed of last 10 comments from blog – **use xml feed**
- The Boston Condo Blog – image and snip it of most recent blog article in Boston (wordpress blog)
- My condoDomain – call-out for customer log-in

2) Search
- Ability for visitor to search new developments, featured listings, FSBO listings and MA MLS
- Visitor can perform an advanced search based upon multiple criteria (area, price min./max, beds, baths, square footage, etc.) or by payment (search by payment does not work for new developments)
- Each listings detail page will feature images, price, beds, baths, square footage, condo fee, estimated payment, mortgage calculator, contact form, save and print. Visitor will also be able to view sold comparables (onboard or zillows data widget)

MLS Integration – (using MLS SQL data)

CondoDomain will have the ability to showcase all of the Boston MLS listings on the website.

3) Experience
- Brightcove player
- Ability for visitors to upload a video to the condoDomain directory. Upon upload, condoDomain admin will receive a notification that a video has been uploaded. Admin will approve video prior to pulishing on site. Upon upload send email alert to condodomain with flie location. Send the uploader an email too.
- Ask a Public Question – ability for visitors to pose questions and answer questions . . . threaded discussion forum. Might need to use ajax to build this into an interactive forum.

4) Finance
- Hyper-local with rates, mortgage calculators, faq's and other financing tools as well as local Loan Consultant from Marketing Agreement partner.

5) Buy
- Content about buying with condoDomain – compare us, how it works, faq's, our guarantee, our customers, print $$$ back form, meet us in person (contact form requesting meeting) as well as call to action (search call-out).

6) Sell - this will be a simple form. An agent will process offline and handle.
- Content about selling with CondoDomain
- Free CondoDomain listings – allows anyone to upload their property to the site by offering a co-broker commission of 2.5%. The information submitted will first be approved by a CondoDomain admin before being published to the site.
- Flat Fee FSBO (including MLS listing) – content and "Sell My Condo" today button. This button submission will take visitor to an information gathering form and credit card intake form. This will be a secure page connected to a payment gateway (Paypal). The content submission form will go to a local rep to input into the MLS system and automatically publish it to the CondoDomain site via MLS feed for MA only.
- Get in touch with a full service broker – contact form enabling visitor to get in touch with full service broker
- Developers List your Project with Us – enable a developer to list their property for free

7) About Us
- The Leadership Team – Ability for visitors to view bios of the team members
- Why Choose Us?
- Our Mission

8) Contact Us
- Ability for visitors to view contact information
- Ability for visitors to fill out a simple form to contact CondoDomain

Appropriate - ● Spec Doc - CONDoDomain Brokerix 7-12-0
        ● AND  screen shot mockups

## 3. Functional Requirements

1) Buyer/Seller
- Buyer/Seller can browse Boston MLS listings, featured listings, development listings and FSBO listings
- Buyer/Seller can create a profile
- Buyer/Seller can login to profile
- Within profile buyer/seller can edit profile, save listings/compare listings, interact with agent, add/update/delete sales listing and sign up ability for email alerts. System will not auto send emails @ launch of project.

Saved Listings – ability for customers to save searches and compare saved listings (NOT IN SCOPE) via certain filter criteria (i.e. square footage, price, etc.). Customers will also be able to click a "make offer now" button. The actual functionality of the "make offer now" button needs to be further discussed with condoDomain.

Interaction Log – ability for customer to keep a threaded discussion of all contact with agent, properties, etc. The interaction log will be connected to sales force via an API. – sales force integration not part of this phase. Is this a CRM? Initial launch will use netAgent. CondoDomain will need their own back-end system eventually to run entire company.

Sell My Condo – ability for sellers to enter their property information, pay a fee via credit card (e-commerce) and submit the information to a local agent for MLS input. With credit card approval, the listing can be uploaded to condoDomain. – this will be a simple form. An agent will process offline and handle.

E-mail Preferences – ability for buyers/sellers to view breaking news, sign up for e-mail alerts, etc

2) Developer
- Developer can create a profile
- Developer can login to profile
- Within profile developer can edit profile, add/update/delete a development, add/update/delete listings for development
- Developer will view different navigation when logged in. Condo Domain to supply tab structure

3) Experience/Agent Profile
- condoDomain will be able to upload videos/sound files to the site
- visitors will be able to upload videos to the site. The videos will go through an approval process. Once approved by a condoDomain admin, the video will actually be published to the website. – we need to discuss
- A discussion forum will be integrated into the site to enable an open discussion forum for the "Ask a Public Question" – same as interactive ajax forum

The non-transactional portion of the website will be completely dynamic and allow condoDomain to manage the content for each of the sections. Dreaming Code will provide a content management system to allow condoDomain full access to the content on the website. This system includes WYSIWYG editing of content pages, image/file upload & management, work-flow management for multi-user flow mgmt., and simple lead capture/management through the Inbox Module.

Dreaming Code designs websites with future scalability in mind thereby enabling the client to constantly change/update/refresh sections of the site on their own. Universal color changes, creation of additional promotional banners/buttons as well as changes to actual page lay-outs will be handled on a case by case basis.

Functional and other requirements for the site will be further detailed and prioritized as the development of the website moves from the Discovery into the Design Phase.

## 4. Technical Architecture

This section outlines the technical requirements for the condoDomain project.

The property results pages/shopping cart will be developed in a Microsoft .NET environment and make use of AJAX scripting technology for client-side presentation where applicable. The database structure powering the application will reside on SQL Server 2000. To retrieve data from MLS, Dreaming Code will use MLS Vow pin.

The application will be hosted on Dreaming Code servers, using the latest Windows OS, IIS Webserver, SQL Server 2000 Database support.

## 5. Constraints and Assumptions

The following section provides a list of general constraints and assumptions that have been identified during Discovery; functionality-specific assumptions are identified in the Functional Requirements Section.

### 5.1 Constraints

The following constraints in some way affect how the CondoDomain website will operate, although they may not have a direct effect on the Dreaming Code development effort.

> ➢ As of the end of the Discovery Phase, we do not have full technical integration requirements. We may encounter technical and/or functional constraints during the design/development phase when we begin the integration process.

### 5.2 Assumptions

The assumptions fall into several categories: scope, business, creative, technical or project management. The associated project schedule and costs were based on these assumptions being true. Should they prove false, this may very well increase project cost or delay project delivery.

*5.2.1 Project Scope and Deliverables*

> ➢ Approved deliverables will not be altered after final sign-off unless agreed to according to the scope change procedures outlined at the end of this document.
> ➢ All parties (condoDomain, Dreaming Code and any other designated partners) will provide their deliverables as scheduled according to the development timetable included in this document.
> ➢ condoDomain resources will be required to provide assets and approvals to ensure the successful deployment of the condoDomain website.

*5.2.2 Technical*

> ➢ This plan does not include modifications to the website by Dreaming Code that may become necessary if, during the project, the development platform hardware or software requirements change.
> ➢ All software and third party integration partners will be responsible for testing their own deliverables.

> The website design will be optimized for all web browsers. The colors will be an adaptive palette based on a web safe palette.

### 5.2.3 Creative

> ~~All images and logos provided by condoDomain will be legally released for this use.~~
> condoDomain will be responsible for providing Dreaming Code with electronic files of all logos, images and data for content as required.
> condoDomain assumes all responsibility for obtaining internal and external content and artwork and content compliance. This may include legal, regulatory or other approvals.

### 5.2.4 Project Management

> condoDomain will assign a project manager. The project manager will have the responsibility to respond to any requests for sign-off issued by Dreaming Code.
> condoDomain will provide sign-off for each individual deliverable as it is completed. A separate sign-off covering the entire project will also be provided. Approved documents and milestones will not be altered after final sign-off.

## 6. Customized Content Management

### 6.1 Customized Content Management

Dreaming Code assists in content production/contribution, collaboration and management across the enterprise. This customized system will allow content contributors within condoDomain to build and contribute richly formatted content, photos, etc. in an easy to use content management system without having to call a webmaster, FTP the information or have computer language knowledge. In fact, the users do not even have to leave the web since the content management system is a web based software program, which can be accessed anywhere from any computer with a secure password and log-in, enabling authorized users to publish content directly onto the live Web Server in real time. Please view some illustrations of the Dreaming Code Content Management System below.



8



## 6.2 Benefits of Content Management

- Every page is dynamic (generated on the fly) since the content is derived from the database. As a result, condoDomain will have the ability to add/update/delete pages to the website at anytime in addition to adding/updating/deleting content/photos/listings.
- Speed in adding and maintaining content. Using a set of integrated tools under a common interface, people who do not necessarily possess specialized technical skills will be able to manage content.
- Reduce costs by enabling condoDomain to make changes on its own rather than calling a webmaster and paying $150/hour for a simple content change.
- Development costs are reduced by first storing the desired information in a SQL Server Database. Then, a limited number of templates are created to display different categories of information. Finally, the web pages are generated automatically using the defined templates and data from the database. This is the best method and more efficient than creating every individual web page and link individually.
- Enabling condoDomain to receive contact information from prospective customers. The contact forms used on websites are directly connected to a database. The contact information is e-mailed to condoDomain as well as stored in the database.
- Keeping the website content fresh thereby making the site a destination for visitors. If the content on the website is constantly changing, visitors will be more inclined to visit the site often and refer friends to the site.
- Keeping the website content fresh for Search Engine Optimization

**\*One of the most important benefits of content management:  Keeping the website content fresh for Search Engine Optimization**

## 7. Dreaming Code Development Process

Our methodology to build a website involves a proven 5-step process:

### 7.1 Discovery/Information Gathering Phase
Deliverables:
• Collaborative Q+A session with condoDomain to understand project background, goals and objectives, including proposed site content for the new website, relevant marketing materials (past and current), and imagery or graphic elements that may be used within the design of the new website.
• As required, meetings focusing on site strategy and architecture review, target audience identification, and functional/technical requirements.
• Meetings designed to gain more in depth knowledge about the functionality of the website, required integration, etc.

### 7.2 Design Phase
Deliverables:
• Completing the organization and structure of the content, including navigation
• Finalizing the creative design and the major page layouts (home page, detailed pages)
• Establishing how the creative design will be delivered technically
• Performing usability testing on the existing or new site as appropriate
• Developing prototypes as appropriate
• Create a test plan

### 7.3 Develop/Build
Deliverables:
• Development of the home page and sub page templates.
• Page production of all required current pages. condoDomain will have the ability to add content to the site using the Dreaming Code Real Estate Management System (netAgent).
• Implementation of the templates for the Dreaming Code Real Estate Management System (netAgent).
• Integrate business functions as required and defined in the functional requirements determined during the discovery phase
• Work in concert with condoDomain's management to help get the correct content into the content management system
• Integrate the entire application(s)

### 7.4 Quality Assurance & Delivery
Deliverables:
• Perform final testing and transfer files to the hosting environment
• Conduct unit, integration and system testing and de-bugging
• Coordinate condoDomain acceptance testing
• Train internal personnel on template usage and best practices
• Test all delivered site components to ensure browser compatibility, link validation and proper site performance on development servers.
• Transfer site files to the production server.
• Perform final testing and de-bugging to ensure proper site performance on the production platform prior to go live date.

Dreaming Code suggests that condoDomain do its own testing before the site goes live and Dreaming Code agrees to work with condoDomain on this task. Dreaming Code will fix any bugs documented by condoDomain to the reasonable satisfaction of condoDomain.

**7.5 Fully Managed Services**

Deliverables:

• Maintain website files
• Maintain database/CMS
• 24/7 Support
• Host site and fix any security issues that may arise
• Consult with condoDomain in ways to expand the effective use of the
• Help answer any questions/concerns for condoDomain
• Help condoDomain with any content related issues
• Serve as the main point of contact for any issues related to the "Internet/web"

**Your Dreaming Code Internet Solution includes:**

- Full design of a professional website
- Secure business class web or POP3
- A powerful and secure website control panel
- Unlimited point-and-click website editing with the Dreaming Code Content Manager
- Premium site statistics and traffic reporting tools – we use Google Analytics as a third party vendor
- Customer service and support 24/7/365
- Enterprise level Tier-1 fiber optic hosting in our ultra-fast state of the art facilities – we use Rackspace as a third party vendor
- Redundant Internet connections, power supplies and backup diesel generators
- FREE website transfer of 55 gigabytes a month with no bandwidth cap
- Daily website maintenance and nightly website backups
- Complete website security with encrypted database and firewall protection
- The unbeatable Dreaming Code 99.99% website uptime guarantee

**Please Note:** Hosting, support, maintenance, and backups are included with every Dreaming Code website.

## 8. Warranty

Dreaming Code warrants that the Services, if properly used by condoDomain, will perform substantially in accordance with the mutually agreed to requirements. The warranty will apply only to failures reported to Dreaming Code in writing within ten (10) days after the date condoDomain learns of the failure. Other than as specified above, condoDomain assumes the responsibility to take adequate precautions against damages to its operations, which could be caused by Service defects, interruptions or malfunctions.

Dreaming Code will provide a Warranty period of 60 calendar days following the delivery of the website. During this Warranty period, Dreaming Code will provide the following services at the designated service levels.

| Services | Service Levels |
|---|---|
| First line support for operational or functional system failures with hours of support and on-site/telephone assistance provided as indicated | Response within 1-2 hours 24/7/365 |
| Development and implementation of modifications required to resolve operational or functional defect or other "bugs" | Response within 1-2 hours 24/7/365. Modifications to be complete within 2-3 business days depending upon work involved. |
| Responses to user questions on web functionality or on web operational procedures | Response within 1-2 hours 24/7/365 |

11

Dreaming Code guarantees and warrants that all software developed has been tested and is fully capable of providing accurate results.  Dreaming Code also warrants that the software will keep secure all personal and/or financial data of the user.

## 9. Intellectual Property Ownership

condoDomain shall own all rights (copyright – all rights reserved), title and interest to the design and content of the website (graphics, images, etc.), including but not limited to, all rights to HTML and scripts, and including any suggestions, ideas, revisions, or other recommendations provided by Dreaming Code or any other party.

Dreaming Code will allow condoDomain to use the Dreaming Code Real Estate Management System (netAgent) as a subscription service. The monthly service fees include the monthly licensing fees to use the Dreaming Code Real Estate Management System (netAgent). This system will allow condoDomain and those authorized from the company to add/update/delete existing images/content within a working framework design on the client site.

Dreaming Code alone (and its licensors, where applicable) shall own all right, title and interest, including all related Intellectual Property Rights, in and to the Dreaming Code Technology, the Content and the Service and any suggestions, ideas, enhancement requests, feedback, recommendations or other information provided by condoDomain or any other party relating to the Service. This Agreement is not a sale and does not convey to you any rights of ownership in or related to the Real Estate Management System, the Dreaming Code Technology or the Intellectual Property Rights owned by Dreaming Code.

## 10. Right to Terminate Agreement

condoDomain may terminate this Agreement at any time by giving thirty (30) days' written notice to Dreaming Code.  In the event of termination by condoDomain, condoDomain agrees to pay for all services performed under this Agreement prior to termination.  A termination by condoDomain shall not be deemed to have been made unless it is in writing and delivered to Dreaming Code at its address set forth on page one hereof.  In the event of termination by condoDomain, the parties agree that Dreaming Code shall not remove or alter any content from condoDomain's website which exists at the time of termination.  condoDomain will receive all html website files on a CD.

Note: The html website files you will receive on a CD will consist of the following: pictures, graphics and layout that are seen by your customers. You will not have access to any files/intellectual property which enables condoDomain to manage the website.

## 11. Confidentiality

By virtue of this agreement, the parties may have access to information that is confidential to one another ("Confidential Information").  Confidential Information shall include, but not be limited to, any information relating to the parties' respective business operations, products, processes, customers, employees, suppliers, prospects, pricing, employment compensation, methods of doing business or financial condition and, in addition and not in limitation to the foregoing, all information clearly marked as confidential, or information identified by the disclosing party as confidential at the time of disclosure and summarized as confidential in a written memorandum delivered to the recipient within fifteen (15) days of disclosure. A party's Confidential Information shall not include information which: (a) is or becomes a part of the public domain through no act or omission of the other party; or (b) was in the other party's lawful possession prior to the disclosure (and that can be proven to have been in such party's possession); or (c) is lawfully disclosed to the other party by a third party without restriction on disclosure; or (d) is independently developed by the other party; or (e) is disclosed under operation of law, provided the disclosing party gives the other party notice of any such request so that the other party may seek an appropriate protective order.

The parties agree, both during the term of this agreement and for a period of three (3) years thereafter, to hold each other's Confidential Information in confidence. The parties agree not to make each other's Confidential Information available in any form to any third party or to use each other's Confidential Information for any purpose other than the implementation of this agreement. Each party agrees to take all reasonable steps to ensure that Confidential Information is not disclosed or distributed by its employees or agents in violation of the provisions of this agreement.

## 12. Financial Summary

Fixed Price:          $15,000.00
Monthly Service Fee: ~~$1500~~   TBD   *AK~~~~*

Monthly service fee includes the following:

1) fully managed hosting
2) full support
3) e-mail hosting
4) licensing fees for netAgent (Real Estate Content Management System)

Professional Services:

Regular Updates/Consulting          20 hours/month of support          $1500.00/month          ☒

CondoDomain may adjust the number of hours of support on a month to month basis given the company's specific needs.  If CondoDomain  wishes to increase or decrease the number of hours of support for a given month, Dreaming Code must receive the intent to do so in writing fourteen (14) days prior to the beginning of the month in which this option is to be exercised.  Please note: Dreaming Code's hourly rate is $150/hour.

**Payment Terms**

Payment #1 - $7500 (@ signing of contract) October 2 2007
Payment #2 - $7500 – completion of project

**Please Note: Your project will take 6 weeks from start to finish.**
This contract may be amended by either party after launch date. The monthly fee & professional service fees are tentative amounts.

## 11. Acceptance Form

Signature of both parties below indicates acceptance of this proposal and permits Dreaming Code to commence the Discovery Phase for the condoDomain website initiative.

**Document Approval**

| Client Approval: condoDomain | Submitted; Dreaming Code, Inc. |
|---|---|
| By: | By: |
| Name: Anthony Longo | Name: Akshay Vazirani |
| Title: | Title: Chief Technical Consultant |
| Date: 10-3-07 | Date: |

PLEASE SEE ACC Attachments

13

SPEC DOC – condoDomain.com Brokerage

Draft 7-16-07

**General Tech Spec:**

*Tech*:
GUI programming – HTML, AJAX & Other SEO enhanced languages   *Next*
Database (built for expansion & speed)
Default settings for 1024x768
Community Data by OnboardNavigatorLLC, Zillow API (See Redfin)
User Login / Email Auto Alerts
Developer Login
Sales Force Connectivity   *HOLD*    *HOLD*
Explore Multi-lingual – Spanish version

*Marketing*:
Logo, Tagline, Color Schema Edit
PPC vs. Organic sliding scale budget
Directories
Link Building
PR – Traditional
PR – for digital enhancement (Releases & Article Distribution

*SEO*:
301 Re-directs on all "www" addresses
No Duplicate Content  - Edit out musts with robots.txt
Strip Lean Coding
Wordpress /Blogging Systems Implementation
HTML only for SEO City & Neighborhood pages
Sub-Domain routing

**General Usability Spec**

*Buyer/Seller*
The main user of the system is a buyer/seller with this profile.  Here they can login, save,
compare and even sell a condo on our website.

Login (Facebook Tabs: Profile, Saved Listings, Interaction Log, Sell My Condo, Email
Alerts)

Profile:

* Email
* Confirm Email
* Password
* First Name
Last Name
Address 1
Address 2
City

*Jeremy Cope , MfN Akshay*

55 Temple Place, 2nd Floor
Boston, MA 02111

Akshay —

Please make a copy of all of this and mail me back one.

There is an envelope inclosed.

Thx.

Tony

---

Also on all other matters regarding anthjames and condoDomain lets hold on services...except craigslist...keep those going (although I haven't seen them in a while).

Address 2
City
State
Zip
Neighborhood Drop Down (if not in list – ability to add a neighborhood)

Main Contact @ Sales Center – this is behind the scenes in sales force for our agents)
Email for contact
Phone for Contact

Price Range (Min/Max Drop Downs)
# of Units
# of Stories
Occupancy Text Box

Photos 1-8 Upload

Development Team Info
Developer
Architect
Designer
Construction

----------------- ---------------------

Add/View Featured Listings (Add – Edit – Delete for each listing connected to a
development above.)

Connected to a development
Co-Brokerage Commission offered
Listing Details
Auto Fill Address 1 & 2
Auto Fill City & State and Zip
Unit #
List Price
Condo Fee (Monthlty)
Taxes (Annual)
Sq/Ft
Beds
Baths
Open Houses

Property Type Info
Additional Detals
Location Info
Utility Info
Residence Amentieis
Building Amenities
Lifestyle Amenities

Description Box 1
Desicripti9on Box 2

Unit Status: ONLINE or OFFLINE
------------------------ -------

State
Zip
Phone
-----------------------------
* I am a: (drop down from condoDomain list)
* Searching for a: (drop down from condoDomain list)
* I prefer: (drop down from condoDomain list)
* My price range is: (drop down from condoDomain list)

Default Financing Information
Down payment
Mortgage Product

Saved Listings:

Storage Space with Compare Feature
Line Items like our search box with sorting header. And make offer now buttons

Interaction Log/ Notes w/ Agent (Email, Phone, Fax Log)
connected to sales force.

For those who want to sell there is a sell side, credit card oriented…and submission of
information to local agent for MLS input.
Credit Card approval give them ability to upload a listing to our system and syndication
network.

Email preferences: breaking news, etc. ,etc

*Developer*
The 2nd type of user is the developer user.  Here a developer or sales and marketing firm
can add a development (parent) or listings for a development (child) as many as they
want for sale.  The development will be live immediately and our team would get
notification to make sure it is a legitimate development.

Login   (Facebook Tabs: Profile, Add a Development, Add Featured Units)

Profile:

* Email
* Confirm Email
* Password
* First Name
* Last Name
* Address 1
Address 2
* City
* State
* Zip
* Phone
* Website
-----------------------------------------
Add/View a Development View Default with Tracking Views (Add – Edit – Delete)

Market Drop Down (Project is in)
Development Name
Address 1

## My street view is so nasty

Anthony Longo Jr. - condoDomain.com [anthony@condodomain.com]

**Sent:** Thursday, July 31, 2008 11:23 AM

**To:** Akshay Vazirani; Dan Tofflin [toffling@dreamingcode.com]

I have wet dreams everynight....i love it so much....sick...

You guys should be selling this as a $25k install!!!!!  Everyone will want
it!

Anthony Longo Jr.
337 Summer Street 2nd Floor Boston, MA 02210
877.852.6636 x. 702 · 617.515.5498 cell · Fax 617.507.8447

www.condoDomain.com
www.LinkedIn.com/in/longo


Visit the all new http://Boston.CondoDomain.com

------ Forwarded Message
**From:** Tony Loungo <anthony@condodomain.com>
**Date:** Mon, 18 Aug 2008 13:28:18 -0600
**To:** Daniel Toffling <toffling@dreamingcode.com>, Akshay Vazirani
<vazirani@dreamingcode.com>
**Subject:** Vote for us

We are in running for most innovative real estate company!

http://www.inman.com/community/groups/alternative-business-models/2008/08/18/the-xxix-olympiad
_____
Anthony Longo Jr.
337 Summer Street 2nd Floor Boston, MA 02210
877.852.6636 x. 702 · 617.515.5498 cell · Fax 617.507.8447

www.condoDomain.com
www.LinkedIn.com/in/longo

*Visit the all new http://Boston.CondoDomain.com*


No virus found in this incoming message.
Checked by AVG - http://www.avg.com
Version: 8.0.138 / Virus Database: 270.6.5/1619 - Release Date: 8/18/2008 5:39 PM


------ End of Forwarded Message

## Contracts, etc

Anthony Longo Jr. - condoDomain.com [anthony@condodomain.com]

**Sent:**　Monday, August 18, 2008 4:08 PM
**To:**　Akshay Vazirani
**Attachments:**　DC-Launch.xls (76 KB)

We need to finalize our contracts and your equity and split our
responsibilities etc asap....

What does your schedule look like.

Also when we meet lets look at timing for expectations...if you look at doc
we are already 9 weeks behind schedule

Anthony Longo Jr.
337 Summer Street 2nd Floor Boston, MA 02210
877.852.6636 x. 702 · 617.515.5498 cell · Fax 617.507.8447

www.condoDomain.com
www.LinkedIn.com/in/longo


Visit the all new http://Boston.CondoDomain.com



No virus found in this incoming message.
Checked by AVG - http://www.avg.com
Version: 8.0.138 / Virus Database: 270.6.5/1619 - Release Date: 8/18/2008 5:39 PM

## Re: Check

Anthony Longo Jr. - condoDomain.com [anthony@condodomaln.com]

**Sent:** Saturday, September 06, 2008 12:22 PM

**To:**   Akshay Vazirani

I am working on it best I can.
Major set backs because of site delays as you know our income structure.
Remember I have not been able to collect any revenues from citeis not being
open...so I am trying to catch up just off Boston income...were getting
there tho with just Boston alone.

I am honoring 3k per month even without backend complete....and will catch
up on back end as I can...can chat more on it if you want...more than happy
to show you biz model again so you can understand.

Not an excuse...believe me...can show you on paper you will understand...if
2nd market launched June 22nd per our spreadsheet..would be in much
different position...


On 9/5/08 5:44 PM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:

> Dude
>
> I need you to clear that balance as per your promise. When will you do this?
> Please let me know.
> -----Original Message-----
> From: "Anthony Longo Jr. - condoDomain.com" <anthony@condodomain.com>
>
> Date: Fri, 05 Sep 2008 17:36:26
> To: Dan Tofflin<toffling@dreamingcode.com>
> Cc: Akshay Vazirani<vazirani@dreamingcode.com>
> Subject: This weekend
>
>
> Dan - are you around this weekend?
>
> Im not too happy that we let an entire week go by without talking once or
> updating our sheet.  Last we talked was last Thursday.
>
> Tuesday a.m. I had put out these 2 docs (attached)
>
> 2 items with high-priority to be finished by today.  No idea what has gotten
> done or not...but I am sure Akshay can share with you our status.
>
> We all need to work together better with deadlines and communication.  As
> you know we are very behind on our rollout and I have investors backing this
> ...that can or will walk away if I don't perform.
>
> Not to get into to many gorry details...but I am a main driver for revenue
> behind this company...and I am spending way too much time developing the
> site...we have Boston locked down...it took us 7.5 months to clean up bugs
> & errors after we officially launched January 10th this year....
>
> Akshay and I have a great plan to catch up...its all very doable and
> actually quite simple because I can have my team working on back end stuff

> while you guys are working on front end....but I need access and we need to
> clean up dallas bugs before moving forward.
>
> Please let me know your availability so we can catchup.  I can be available
> anytime this weekend.
>
> Thx,
> TL
> _____
> Anthony Longo Jr.
> 337 Summer Street 2nd Floor Boston, MA 02210
> 877.852.6636 x. 702 ·  617.515.5498 cell ·  Fax 617.507.8447
>
> www.condoDomain.com
> www.LinkedIn.com/in/longo
>
>
> Visit the all new http://Boston.CondoDomain.com
>
>
>
>
>

_____
Anthony Longo Jr.
337 Summer Street 2nd Floor Boston, MA 02210
877.852.6636 x. 702 ·  617.515.5498 cell ·  Fax 617.507.8447

www.condoDomain.com
www.LinkedIn.com/in/longo


Visit the all new http://Boston.CondoDomain.com




No virus found in this incoming message.
Checked by AVG - http://www.avg.com
Version: 8.0.169 / Virus Database: 270.6.16/1651 - Release Date: 9/5/2008 7:05 PM

# Re: Check

Anthony Longo Jr. - condoDomain.com [anthony@condodomain.com]

**Sent:** Tuesday, September 16, 2008 4:14 PM

**To:** Akshay Vazirani

I do know that...and it upsets me (not you, just me being behind upsets me) just the fact of being behind kills me. You will be paid in full PLUS!! I promise you and I understand if we need to suspend service until that piont.  I totally respect that if it needs to be ...if we can populate 4-5 cities I can increase rev in 30-60 days and catch up before we progress if that's better for you & DC....im totally open to all/any ideas to catch up.  i feel like shit that im in this situation and putting you in that sistuation.  I promise its temporay..

Bottom line is that boston costs me 30k per month to operate (before tech costs)....we make 20-40k per month(just started too)...so im finally getting in green...but when I open market 2 (dallas)...it costs me no more money..same with #3, #4 and #5..its all green from there...and I can pay up the balance owned..and pay down amex biz acct enough to take on the montly re-accuring no sweat.  We are VERY Close...i mean very...just need to  open 2-3 more cities and RUN THEM for 30 days and im there...with moretgage and title fees alone.

On 9/16/08 4:07 PM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:

> T,
>
> it should not bother you (as much as it does)
> I have my book-keeper and my CPA meeting each Tuesday and they make it a
> fucking point to bring up this line item on every meeting/call
>
> they ping me = in turn I ping you
>
> the amount of investment I am putting into CD is 1 million X more than the
> monthly fees. you know that too. so there is nothing to be upset about. you
> can walk me through this off line (again) and I promise I will understand
> more
>
> -----Original Message-----
> From: Anthony Longo Jr. - condoDomain.com [mailto:anthony@condodomain.com]
> Sent: Tuesday, September 16, 2008 4:02 PM
> To: Akshay Vazirani
> Subject: Re: Check
>
> Understand but there is no money Akshay, ZERO, None.  Why do you ignoring me
> on this point?  We are only open in 1 market, 8 months (yes 8 months) after
> the completion of Boston (launched Jan 10th).  I have went over the #'s with
> you...I need to be open in more markets to pay for this...i have shown you
> the pro-formas.
>
> Why are we having this conversation again...it depresses me and upsets me
> that the company owes you hosting fee's...its reality for BOTH of us.
>

> In one hand you have been extremely accommodating with this partnership, but
> on the other...delays have caused us to fall very much behind.
>
> As always im free to privately talk to you on this anytime.
>
>
>
>
>
> On 9/16/08 3:53 PM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:
>
>> we need to put the monthly recurring on a credit card/amex. just like I
> have
>> mine on rackspace. I understand what you had emailed me but we need to
>> resolve this item.
>>
>> the monthly recurring has to be dealt with as a separate line item. I hope
>> you understand where I am coming from.
>>
>> its like your x5 = whether you fill it with gas OR not = you need to pay
> for
>> it on a monthly basis. (is that a bad example)  :)
>>
>> -----Original Message-----
>> From: Anthony Longo Jr. - condoDomain.com [mailto:anthony@condodomain.com]
>> Sent: Tuesday, September 16, 2008 3:49 PM
>> To: Akshay Vazirani
>> Subject: Re: Check
>>
>> We had this conversation last week akshay...i wont see funds till months
>> end.
>>
>>
>> On 9/16/08 3:48 PM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:
>>
>>> Tony,
>>>
>>> please be sure to bring in the check for the past months
>>>
>>> I really need your help to clear the past balances tomorrow
>>>
>>> thanks in advance and see you @ 12 noon
>>>
>>> -----Original Message-----
>>> From: Anthony Longo Jr. - condoDomain.com
> [mailto:anthony@condodomain.com]
>>> Sent: Tuesday, September 16, 2008 3:15 PM
>>> To: Akshay Vazirani
>>> Subject: Time for tomorrow????
>>>
>>> 4th email?
>>> _____
>>> Anthony Longo Jr.
>>> 337 Summer Street 2nd Floor Boston, MA 02210
>>> 877.852.6636 x. 702 .  617.515.5498 cell .  Fax 617.507.8447
>>>
>>> www.condoDomain.com
>>> www.LinkedIn.com/in/longo
>>>
>>>

```
>>> Visit the all new http://Boston.CondoDomain.com
>>>
>>>
>>>
>>>
>>>
>>> No virus found in this incoming message.
>>> Checked by AVG - http://www.avg.com
>>> Version: 8.0.169 / Virus Database: 270.6.21/1671 - Release Date:
> 9/16/2008
>>> 8:15 AM
>>>
>>
>> _____
>> Anthony Longo Jr.
>> 337 Summer Street 2nd Floor Boston, MA 02210
>> 877.852.6636 x. 702 .  617.515.5498 cell .   Fax 617.507.8447
>>
>> www.condoDomain.com
>> www.LinkedIn.com/in/longo
>>
>>
>> Visit the all new http://Boston.CondoDomain.com
>>
>>
>>
>>
>>
>> No virus found in this incoming message.
>> Checked by AVG - http://www.avg.com
>> Version: 8.0.169 / Virus Database: 270.6.21/1671 - Release Date: 9/16/2008
>> 8:15 AM
>>
>
> _____
> Anthony Longo Jr.
> 337 Summer Street 2nd Floor Boston, MA 02210
> 877.852.6636 x. 702 .  617.515.5498 cell .   Fax 617.507.8447
>
> www.condoDomain.com
> www.LinkedIn.com/in/longo
>
>
> Visit the all new http://Boston.CondoDomain.com
>
>
>
>
>
> No virus found in this incoming message.
> Checked by AVG - http://www.avg.com
> Version: 8.0.169 / Virus Database: 270.6.21/1671 - Release Date: 9/16/2008
> 8:15 AM
>


_____
Anthony Longo Jr.
337 Summer Street 2nd Floor Boston, MA 02210
877.852.6636 x. 702 ·  617.515.5498 cell ·  Fax 617.507.8447
```

www.condoDomain.com
www.LinkedIn.com/in/longo


Visit the all new http://Boston.CondoDomain.com



No virus found in this incoming message.
Checked by AVG - http://www.avg.com
Version: 8.0.169 / Virus Database: 270.6.21/1671 - Release Date: 9/16/2008 8:15 AM

Updated: 3/17/09

**Akshay Equity / Conversion Draft Guidelines**
**10% Equity Stake in CondoDomain.com LLC**

**Front End Development & Database Management**  *Completed – 5% Equity*

1. Currently open in 18 markets with growth potential to 35 markets total including blogs.
2. Incorporation of MLS's (most likely going to be outsourced by Wolfnet or another 3rd party company, but DreamingCode agrees to implement



**Back End Development** -- *Not Complete* – 5% Equity
1. Current functionality that is in place today
2. Clean up of fields & functionality (add whats needed / delete whats not)
3. Custom Login Homepage per spec
4. Auto-Email design, access & setup
5. (We need to set a date for completion of this as the backend is not worth the equity investment until it is useable.) Want to say May 1st?

**Email/Hosting**
1. Hosting for the CondoDomain site will be billed out $3,000 per month

**Ongoing Maintenance**
1. Warranty on any errors, software or database errors including blogs, search pages, MLS data, mapping, API's, backend, front end (including re-writes).
2. Flat rate of $75/hour for out of scope design/upgrades (including images changes, video changes, graphics, new pages, new content, etc)

**Performance**
1. DreamingCode will execute all support or maintenance tasks in a reasonable amount of time. High priority errors/items to be fixed and completed within 24 hours, non-high priority items within 96 hours.

**Upon Acquisition/Sale**
1. CondoDomain will make all efforts to promote the relationship with DreamingCode in order for the company to keep its maintenance contract with DreamingCode.. However, if for some reason the buyer wants to transfer hosting & maintenance to their own company of choice, DreamingCode agrees to help transfer the platform to the buyers for a fee no more than $10,000.

**Outstanding Balance(s)**
1. CondoDomain has a priority to pay down all outstanding balances it has with DreamingCode over the course of the year. If for any reasons there is a sale or acquisition, DreamingCode balances (if any) are to be paid first.

**Ancillary/Roles**
1. DreamingCode to become a public figure as our exclusive web partner
2. Akshay Vaziarai to become a member of the Board of Directors

## Re: Billing

Anthony Longo Jr. - condoDomain.com [anthony@condo-domain.com]

**Sent:** Wednesday, July 29, 2009 12:04 PM

**To:** Akshay Vazirani; Dreaming Code Billing Dept. [billing@dreamingcode.com]

3k per month was 1.5k for hosting and 1.5 for backend/CRM – which we have not used (we tried as you know but never worked for our model setup) and have formally engaged Salesforce (although waiting for VC check) to kick off that platform....we still owe you 2008 funds....but hosting is 1.5k per month with you guys and then $250 additional per month when we add MLS's which also wont get kicked off unitl VC check in hand.

I can get on hard schedule for 2008 repayment – if you give me a week to look at our balance and revenue coming in will be able to make accurate promises for repayment.

On 7/29/09 11:48 AM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:

> Hi T,
>
> Please note:
>
> The deal we had in place was that you were to start paying us $3k per month. Of the $3k, you had requested we keep adding $1.5k of that to the debt that keeps adding up.
>
> Starting next month, Dreaming Code is no longer in a position to afford CondoDomain to keep adding to the burgeoning balances. We will be invoicing you $3k per month and this is the exact amount that will need to be charged on your Amex.
>
> Note: We need a check or a payment on the past balances within the next week as no monies have be paid towards the old balances that continue to grow
>
> Thank you for your attention to this matter
>
> Akshay

## Are you back to work?

Anthony Longo Jr. - condoDomain.com [anthony@condo-domain.com]

**Sent:** Tuesday, September 22, 2009 8:02 AM

**To:** Akshay Vazirani

If so I need 1 hour from you either tomorrow or Thursday with Chancellor and
I.

Everything is getting drawn up, contracts, relationship, pay down, equity
docs, and I want you to meet Chance as he is running all our budegts now,
etc and we have a few design upgrades we need quotes on.

Let me know what time works and Ill make it work on our end.

Thx,
TL

## Re: Your Input Help Needed with this (Akshay Vazirani | CondoDomain)

Anthony Longo Jr. - condoDomain.com [anthony@condo-domain.com]

**Sent:** Tuesday, October 27, 2009 5:21 PM

**To:**   Akshay Vazirani

---

This is far from accurate but happy to talk about it.
Don't forget when you had to completely rebuild the entire system (took almost 3 months) because it wasn't built for scale even though that is what was on spec.

You noted you were going to put together a proposal on how to get more involved and upgrade our current system (which is paid in full by the way).

Accrued charges are for hosting only...in which we are trying very hard to catch up...and is 100% due to you....Im working my fanny off to get this chopped down for ya asap!

Look forward to your proposal.


On 10/27/09 4:58 PM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:

1. Akshay Vazirani was promised 10% of CondoDomain
2. The conversation of having the 10% vested fully happened in May 2009
3. The original concept:

      - Get CondoDomain to be dynamic enough and allow it to scale for several cities
      - Akshay Vazirani worked on the system to allow CondoDomain to launch in several cities
      - Akshay Vazirani worked on customizing WordPress to allow CondoDomain to have 30+ blogs  for cities on 1-single platform
      - Akshay Vazirani helped launch all the cities (that were planned to be launched)
      - The scope (and the vesting) was to be include launching (and Akshay to get his portion)
      - Every city was lit up with the correct technology (the remaining part was the MLS feed) The MLS feed was something that was not
         supplied to Akshay Vazirani
      - The development of the site was hugely subsidized to the tune of 100's of thousands of US dollars
      - The remaining balance still continues to accrue (365 days +)

      4. At the current stage, even though Anthony Longo had stated "the 10% should be all set" and "Akshay, you have been more than
         supportive and have been a great partner" = Akshay Vazirani is willing to agree to 7.5% ownership at the current level of work and
         commitment that was followed through with this project

      5. The entire system was built out to work and launch every city and all the blogs were launched


      T, this is a start to my document that I have been trying to outline. We may need

to do this over (in person) and figure this out

Akshay

## Re: Hope you had a good thxgiving

Anthony Longo Jr. - condoDomain.com [anthony@condo-domain.com]

**Sent:** Tuesday, December 08, 2009 10:32 AM

**To:** Akshay Vazirani

---

Confidential -- I am gtting a $35M listing in NYC (I Know nuts) - commission
is 1.8M (split in 2 of course)

I can not wait to pay you off in full so the people who work there like me
again!


On 12/8/09 10:29 AM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:

> Thank you
>
> Also: answer to yur earlier question about "sub domains"
>
> This is funny:
>
> We don't have anyone/client that has 30+ domain names / 30+ blogs/ and 60+
> variations on sub domains.
>
> Therefore the confusion on our end (with reference to sub`domains)
>
> ----- Original Message -----
> From: Anthony Longo Jr. - condoDomain.com <anthony@condo-domain.com>
> To: Akshay Vazirani
> Sent: Tue Dec 08 09:26:58 2009
Subject: Re: Hope you had a good thxgiving
>
> Yeeha...read through the doc and let me know and we can set up call...to
> review.
>
> I am also back in Boston for 1 day...Saturday eve and Sunday morning if you
> wanted/need to meet....if we can not accomplish on phone.
>
>
> On 12/8/09 10:24 AM, "Akshay Vazirani" <vazirani@dreamingcode.com> wrote:
>
>> Hi
>>
>> I am back and my dad left back for Bombay/Mumbai last night
>>
>> I am all yours now!
>>
>>
>> ----- Original Message -----
>> From: Anthony Longo Jr. - condoDomain.com <anthony@condo-domain.com>
>> To: Akshay Vazirani
>> Sent: Tue Dec 08 09:16:07 2009
> Subject: Hope you had a good thxgiving
>>
>> Looking to wrap up the doc from last week....so it doenst drag on another
>> year :)
>>

```
>> Let me know yoru schedule.
>>
>> Thx,
>> TL
>>
>>
>>
>
>
>
```

Case 1:10-cv-11051-WGY Document 1-4 Filed 06/21/10 Page 92 of 131



**Commission Refund Ticker**
**$944,296.96**
Last update 4/15/2010



VISIT OUR CITIES TO SEARCH PROPERTIES AND MEET OUR AGENTS:

You Tube
SHARE

| | | | |
|---|---|---|---|
| Atlanta | Chicago | Los Angeles | San Diego |
| Austin | Cleveland | New York | Seattle |
| Baltimore | Dallas | Orlando | San Francisco |
| Boston | Houston | Philadelphia | Washington D.C. |
| Charlotte | Las Vegas | Phoenix | |



Coming Soon: Denver | Detroit | Ft. Lauderdale | Hoboken | Honolulu | Jersey City | Miami | Minneapolis | Naples | Orange County | Palm Beach
Portland | Providence | San Antonio | St. Louis | St. Paul | Tampa   Canada: Montreal | Ottawa | Toronto | Vancouver

All content © Copyright 2009 CondoDomain, Inc. All Rights Reserved.   Privacy Policies | Condo Blog | Contact Us          Don't see your city? Email us

   The Boston Globe   Boston Business Journal      Entrepreneur.com

----- Original Message -----
From: Anthony Longo <a@condodomain.com>
To: Akshay Vazirani
Sent: Sat May 08 10:49:03 2010
Subject: Disengagement from DreamingCode


Akshay

As you know you the relationship between DreamingCode and my company has
gone on with un-due stress over the past year but most recently (the past
month) has escalated to levels of verbal threats of you shutting down my
website and [3]crushing me[2].  With such threats and for the well being of my
entire company, and the well being of our employees, I needed to take
drastic actions and begin rebuilding our entire website offline which has
costs me hundreds of hours and thousands of dollars.

With the idea of keeping this note short and in no particular order, the
below actions you have taken upon me in the recent weeks were the driving
reasons to begin a complete rebuild to protect and secure the safety of our
company.

* Request to move my email  denied
* Request to move my blogs  denied
* Change order in which I paid for on adding MLS[1]s  paid but still has
undelivered terms
* Formal request to lower the monthly dues due to the unsatisfactory and
undelivered CMS & web-based MLS - denied (first verbal threats towards me
when leaving my office)
* The week after you delivered via certified mail a [3]proposal and solution[2].
The terms were malicious and damaging as you know that I was handcuffed to
the DreamingCode system.  Raising our base hosting/maintenance from
$1,500/month to $7,500/month was absolutely unheard of.

The damage is done. There is no need for me to sit here and pour out
negative words about you or your company, how you treat your clients, and
how you keep them handcuffed to your services while you demand increased
monthly rate charges [3]after the client can[1]t leave you.[2] You have done an

6/9/2010

awful thing to me and to my company and hopefully some day you will look back upon this and learn from it so you don't do it to someone else. I am also aware of and spoke to other clients in which you have done this too.

Now that I am no longer handcuffed to your company, your backend system or your services, I can finally tell you all of this.

Our new site should be launched within the next few days. As you can imagine I am neck deep in development with this project as I have been for the past 3 weeks, more than 18 hours per day. I do acknowledge we still have an outstanding balance with you in which we WILL pay as that is how I operate as an honest and fair business person. We will also pay a prorated amount for our hosting for the month of May from May 1 to today May 7th.

I am beyond the negativity of this project and far beyond ever working with you again. This letter will hopefully serve as a professional parting of our relationship. This is what I propose for us to satisfy the termination of our relationship.

1. Dreaming Code to release all source files that are owned by CondoDomain
2. Dreaming Code to release all content, photos, multi-media, that are owned by CondoDomain
3. DreamingCode to prepare an export for all dynamic content and the property data & photos in a format that can be uploaded into a new database.
4. DreamingCode to prepare an export for all of the blog content (city blogs and corporate blog), site files, photos, multimedia, etc so we can import into our new wordpress architecture.
5. DreamingCode to prepare a final export of all of our leads & system data
6. DreamingCode to delete and wipeout all CondoDomain files, leads, system architecture so it can not be stolen or misplaced after it is received by us.

If this can be done in a satisfactory term to both of us, we can execute a final parting agreement and we can submit a final payment to DreamingCode for any dues that are due to your company. If for whatever reason you do not cooperate by releasing any and all information owned by myself or my company, we will take action and also begin to account for additional damages for my team to duplicate all of the owned content by my company.

Last note. Just so you know and you don't try to strong-arm me one last time. I have made a complete copy of our website(s) and blog(s). The exact duplicate ³offline² copy site sits next to me on an external hard-drive safe from web-attacks by hackers.

Happy to meet in Boston or do a phone call and transfer these file which ever is best - and of course satisfy final payments to DreamingCode.

The sooner the better so I can get my site backup but if for some reason we can not get this done by Tuesday May 11th, we will take further actions to receive what is owned by our company. With our website generating more than 40 leads per day, every day we are down we loose a tremendous amount of

revenue.  Any unreasonable delay on your end getting us our site files will force us to take action.

I hope this doesn't cause you to do anything harmful to me or my company. Because of our past personal relationship I am familiar with your temper and negative tactics including outsourcing to your team in India to prank call people for hours on end until they had to shut their phone off, and also hacker attacks on their websites.

I have one goal in mind here and it is to retrieve what is owned by my company, to pay you the amount of monies that are due to you, sign off on each other and go our separate ways.  Take into consideration the enormous cost I have had to outlay to redevelop this site and the month I have had to put my schedule on hold to quarterback a complete rebuild of the website. It was my mistake to ³give you the keys² to our web platform, that is a lesson I have learned.  Lets just settle this and move on our separate ways. My site has been error prone since day 1 with more than 2000 support tickets in less than 3 years.

Look forward to resolving this very stressful and difficult situation ASAP.

Sincerely,

Tony Longo

6/9/2010

May 10, 2010

# CUMSKY & LEVIN LLP
### ATTORNEYS AT LAW

VIA EMAIL, FAX AND FIRST CLASS MAIL

Mr. Anthony Longo
Condodomain.com LLC

RE: Website Design/Development & Real Estate Management
Subscription Agreement dated as of October 2, 2007 between
Condodomain.com LLC and Dreaming Code (as amended and
supplemented from time to time, the "**Contract**").

Mr. Longo:

Thank you for your email of Sunday May 9, 2010. As with your previous email, I will not take
the time now to dispute your many erroneous and factually inaccurate statements regarding
Dreaming Code.

However, since you seem to miss completely the main point of my letter, let me again restate it
for the record.

Your company entered into the Contract with Dreaming Code. Dreaming Code built and
managed a website on your behalf for many months, thus fulfilling its obligations under the
Contract. Your company, by your own admission, has failed to pay large sums due Dreaming
Code under the Contract. Your company is in breach of the Contract. It is settled Massachusetts
law that if a party deliberately fails to perform its obligations under a contact, it cannot recover
under the contract, and the other party is excused from performance under the contract. Thus, by
your own admissions, your company has no right to demand Dreaming Code do *anything* under
the Contract, until you cure your breach.

You may contact me if you wish to make arrangements to cure your company's breach (though
no partial payments tendered or accepted by Dreaming Code will be deemed a cure, unless agreed
to in writing by Dreaming Code). Otherwise, Dreaming Code is not interested in any further
discussions at this time.

Please be advised further that no waiver or act of forbearance on the part of my client, or anything
contained in this letter (including the enumeration of any potential causes of action or claims, or
any omission therefrom), should be construed as an admission or waiver of any of my client's
rights and remedies. My client expressly reserves all of its rights and remedies under the
Contract and applicable law, to proceed in a legal action or otherwise, as appropriate, including
without limitation an action for misappropriation of Dreaming Code's intellectual property at your
new website. Moreover, Dreaming Code reserves the right to initiate litigation, including seeking
a preliminary injunction, without further notice if events warrant.

Very truly yours,

Robert D. Keough

CC: Mr. Akshay Vazirani

6 UNIVERSITY ROAD
CAMBRIDGE, MA 02138
TEL 617.492.9700
FAX 617.492.9020

May 9, 2010

# CUMSKY & LEVIN LLP
### ATTORNEYS AT LAW

VIA EMAIL, FAX AND FIRST CLASS MAIL

Mr. Anthony Longo
Condodomain.com LLC

Mr.Longo

This office represents Dreaming Code, Inc. I am in receipt of your email to
Mr. Akshay Vazirani, sent on Saturday, May 8, 2010. I am writing in reference to the
Website Design/Development & Real Estate Management Subscription Agreement dated
as of October 2, 2007 between Condodomain.com LLC and Dreaming Code (as amended
and supplemented from time to time, the **"Contract"**).

I do not feel that it is necessary or appropriate at this time for me to rebut the many
misstatements of fact contained in your email. However, I do wish to clarify several
things for the record:

1. As was pointed out to you in Dreaming Code's May 7, 2010 letter, your
company owns the registration rights to Condodomain.com, and thus, you are
free to transfer your company's web hosting responsibilities to another
company at any time, subject to your existing contractual obligations. Any
issues that arise during or because of the transfer of your web host are
thus entirely self inflected, for which Dreaming Code has absolutely no
responsibility or liability.

2. Dreaming Code has fulfilled its obligations under the Contract. However,
you admit several times in your email that your company has breached its
payment obligations to Dreaming Code under the Contract (I make this
observation without prejudice to Dreaming Code's rights to assert other
breaches under the Contract). To the extent that you "request" that Dreaming
Code do anything, whether it is a contractual obligation or otherwise, any
such request will only be entertained when your company has cured, or made
arrangements to cure, its existing breaches of contract, to Dreaming Code's
satisfaction.

3. You state that if "we cannot get this done by Tuesday May 11th, we
will take action to receive what is owned by our company". As you have
freely admitted to a material breach of the Contract by your company in your email, I do
not quite understand what further action you think you can take against Dreaming
Code. However, I can assure you that, if resolution on these issues, to
Dreaming Code's satisfaction, is not promptly achieved, Dreaming Code will
take immediate and vigorous action to enforce its rights under the Contract.

6 UNIVERSITY ROAD
CAMBRIDGE, MA 02138
TEL 617.492.9700
FAX 617.492.9020

# CUMSKY & LEVIN LLP
### ATTORNEYS AT LAW

Notwithstanding the foregoing, Dreaming Code is willing  discuss a mutually agreeable resolution of this matter.   Please direct all calls and correspondence to my attention, and not to Dreaming  Code.  You may contact me at the number below.

Very truly yours,

Robert D. Keough

CC:  Mr. Akshay Vazirani

## Robert Keough

**From:**      "Anthony Longo" <a@condodomain.com>
**To:**        "Robert Keough" <rkeough@cumskylevin.com>
**Sent:**      Sunday, May 09, 2010 7:52 PM
**Subject:**   Re: Condodomain.com LLC

Bob got your note.  Happy to discuss and rid of this situation howevery priority #1 is getting my company back online so it will not be before then.  Hopeful your client will release all code, content, multimedia, etc that is owned by me (and paid in full) in the next 24 hours otherwise I don't think we have anything to talk about.

Eveerything is based upon recieving all content owned and currently held by your client and also destoyed after recipt as your client has most recently been caught for distributing privately owned content for competeing real estate clients to other dreaming code customers and I want to insure he does not do this  with my content. 7

Not looking to make this a big deal, but I have only on agenda and it's to take care of my company.  Your clients contract has been reviewed and is clear and supports my position as the client of DreamingCode.  Happy to discuss the outstanding hosting bill after holding back payments due to recent finds of breach of contract, but again not diving into this until after my company is back and fully operational this week.

Sincerely
Tony L.

Please excuse the brevity of this message as I am on my mobile. (646.657.9232)

On May 9, 2010, at 2:18 PM, "Robert Keough" <rkeough@cumskylevin.com> wrote:

> Please see attached.
>
> Bob
> *******************
> Robert D. Keough
> Cumsky & Levin LLP
> 6 University Road
> Cambridge, MA 02138
> Tel: 617-492-9700
> Fax: 617-492-9020
> Email: rkeough@cumskylevin.com
>
> Confidentiality Notice
> This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual or entity to which it is addressed.  This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message
>
>
> <Ltr 5.9.10 Longo..pdf>

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT
                                               Civil Docket No.:

---

DREAMING CODE, INC.

Plaintiff,

v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

Defendants,

BANK OF AMERICA, N.A.,

Trustee Defendant,

---

### AFFIDAVIT OF AKSHAY VAZIRANI INSUPPORT OF PLAINTIFF'S REQUESTS FOR PRE-JUDGMENT RELEIF

I, Akshay Vazirani, hereby state as follows:

### Introduction

1.      I am a Principal of the plaintiff, Dreaming Code, Inc. ("**Dreaming Code**").  I have

verified the Complaint in this action and I have personal knowledge of the facts that

give rise to the instant dispute. Pursuant to its Verified Complaint, Dreaming Code is

seeking *ex parte* trustee attachments and restraining orders against the defendants,

restraining and enjoining them from transferring assets outside of the ordinary

course of business and ordering them to cease and desist immediately from using intellectual property and other Internet content designed, developed, and built by Dreaming Code and for which the corporate defendant has not paid, despite repeated demand in amounts totaling not less than $322,000.00.

2.      As stated with more particularity in the Verified Complaint, the plaintiff, Dreaming Code, Inc., a Massachusetts corporation, is in the business of software and commercial internet web design, managed internet web hosting, and software production for individuals and businesses. Dreaming Code has brought suit against the defendant, CondoDomain.com, LLC, a Massachusetts limited liability company ("**Condo Domain**").  As of the date of the Verified Complaint, the defendant, Condo Domain has been using the websites developed specifically for it and launched by the plaintiff, Dreaming Code without paying for same, despite multiple representations over an extended period of time by its principal, the defendant, Anthony J. Longo, Jr. ("**Longo**"), that it would do so.  These representations, which were often accompanied by tales of white knight investors together with descriptions of major real estate closings that were to reap huge financial awards, and promises of other cash infusions, were all designed to hinder and delay Dreaming Code in its good faith effort to get paid for what amounts to thousands of hours of work, while at the same time, inducing Dreaming Code, to continue to provide services – and to expand them – on behalf of Condo Domain.

3.       In fact, the defendant, Condo Domain has admitted numerous times that it owes the compensation sought by the plaintiff, that it has benefited and continues to benefit

2

from the plaintiff's products and services, and that it has been thoroughly pleased with the plaintiff's work.

4.      Further, in addition to not paying Dreaming Code the monthly service and licensing fees that it was contractually obligated to, Condo Domain, through the repeated representations of its principal and officer, Longo, also promised to compensate Dreaming Code with an equity stake in the defendant's limited liability company.

5.      However, as with its promises of monthly cash payments, the defendants' equity offer amounted to nothing more than empty words.

6.      Recently, when it became clear that the plaintiff, Dreaming Code, was intensifying its efforts to be paid the money it is owed, the defendant, Condo Domain, in violation of its contractual notice obligations, and at the direction of its principal and officer, the defendant, Longo, and without notice to Dreaming Code, Inc., withdrew its website from the plaintiff's web server and relocated it to a third party host, to make it more difficult for the plaintiff to enforce its rights, and to be compensated for its services.  The defendants also copied the plaintiff's proprietary content and code (as they themselves admitted to the plaintiff in writing) in contravention of the plaintiff's intellectual property rights and violated the confidentiality provisions of the parties' contract.

7.      Despite its repeated breaches of its contractual obligations (many freely admitted to), the defendant, Condo Domain.Com continues to receive unjustly the benefits of the plaintiff's services in constructing and supporting multiple web sites.

8.      Condo Domain is an Internet-based discount real estate broker.

*Agreement is not a sale and does not convey to you any rights of ownership in or related to the Real Estate Management System, the Dreaming Code Technology or the Intellectual Property Rights owned by Dreaming Code.*

Paragraph 11 of the Boston Contract incorporates a Confidentiality provision.

14.     Dreaming Code built the Boston Website to specification and otherwise performed its obligations under the Boston Contract. The Boston Website was launched successfully on or about January 10, 2008.

15.     As a result of what Dreaming Code considered, at the time, to be a good working relationship with Condo Domain, and at Longo's request, Dreaming Code halved the monthly service and support fees charged to Condo Domain under the Boston Contract from $3,000.00 to $1,500.00 per month for the first six months of performance of the Boston Contract.

16.     Beginning with Dreaming Code's July 2008 invoice to Condo Domain, Condo Domain ceased paying Dreaming Code's invoices on a regular basis as required by the Boston Contract, and thereafter unpaid balances began to accrue.

17.     Notwithstanding its failure and refusal to pay Dreaming Code's invoices timely, Condo Domain was pleased with Dreaming Code's services.

**Condo Domain, Making Multiple Promises of Compensation, Requests Vastly Expanded Services From Dreaming Code, Which Dreaming Code Provides**

18.     Shortly after the successful launch of the Boston Website, in or about January 2008, Condo Domain advised Dreaming Code that Condo Domain wished to expand the scope of the original website to target multiple cities.

5

19.     In or about February 2008, Condo Domain had requested that Dreaming Code begin expanding the scope of the Boston Website to have it cover, multiple markets.

20.     Longo offered to compensate Dreaming Code with a ten per cent equity stake in Condo Domain for work beyond the scope of the Boston Contract which would make the Condo Domain website more multidimensional and applicable to numerous other real estate markets beyond the original Boston market (the **"Expanded Website").**

21.     Dreaming Code presented Condo Domain with a rollout plan to accomplish Condo Domain's goal of completing the Expanded Website, while at the same time keeping Condo Domain's initial costs to zero, as such costs were to be borne and absorbed by Dreaming Code in exchange for an equity stake.

22.     Dreaming Code's plan called for payment to Dreaming Code of an additional monthly fee for each newly added targeted city in the Expanded Website, upon the launch thereof  (in addition to the  original base monthly fee under the Boston Contract) , together with the 10% equity ownership stake in Condo Domain offered by Longo.  Meanwhile, Condo Domain's monthly service fee obligation under the Boston Contract for web hosting and technical support for the original Boston Website remained in place.

23.     The parties agreed to the respective terms and conditions for Dreaming Code's work on the Expanded Website.

24.     Shortly thereafter, in or about February 2008, Dreaming Code began work on the Expanded Website.

25.    Work on the Expanded Website continued throughout 2008 and 2009 and new cities were steadily added to the Expanded Website.

26.    Dreaming Code also launched web blogs for each city. The platform for these blogs was created using a proprietary method developed by Dreaming Code.

27.    As of the date of this Affidavit, Condo Domain still makes use of the core components developed by Dreaming Code that power both the Boston Website and the Expanded Website, and derives revenue therefrom.

28.    Indeed, Condo Domain's entire business is based on its website, which website was constructed by Dreaming Code and for which Condo Domain (by its own numerous admissions) agrees it has not paid.

**Condo Domain Becomes Seriously Delinquent in its Payment Obligations to Dreaming Code**

29.    Although Condo Domain remained delinquent under the Boston Contract, Dreaming Code continued to provide services to Condo Domain thereunder and continued aggressively to work on the Expanded Website in reliance on Condo Domain's and Longo's promises of future payment.

30.    During this period, Dreaming Code delivered several reminders and invoices to Condo Domain, and Condo Domain continued to promise payment.

31.    Longo transmitted numerous emails admitting his company's breach of its payment obligations to Dreaming Code and thanking Dreaming Code for continuing to build and fund the work on the Expanded Website.

32.    As of February 2009, Condo Domain had promised Dreaming Code that Condo Domain would retire outstanding balances partly with credit card auto debits, and

partly with checks. During this time, Longo continued to represent to me that Condo Domain would pay down its debt to Dreaming Code as it processed more real estate closings.

33.     During the same period in February 2009 that Longo was promising Dreaming Code that it would pay down its debt under the Boston Contract, he was requesting additional changes to the Expanded Website and suggesting to Dreaming Code that work thereon would facilitate payment to Dreaming Code.

34.     As of February 2009, Dreaming Code had already built out the Expanded Website and had worked thereon for the past 13 months. During the same period, Condo Domain, while intermittently making small payments towards its ever-growing debt in small increments, had tendered no monies whatsoever for Dreaming Code's work on the Expanded Website and had not met any of its payment obligations for the monthly fees due for web hosting and technical development under the Boston Contract.

### Condo Domain Strings Dreaming Code Along with Numerous False Promises of Payment

35.     By email dated March 17, 2009, well over a year after Dreaming Code had already substantially built the Expanded Website, Longo transmitted to me written terms for Condo Domain's transfer of an equity share to Dreaming Code as payment for Dreaming Code's past and anticipated future services on the Expanded Website, which he had first promised in February 2008. Longo wrote:

*Akshay I formulated a one pager I want to edit with you...so when we pass it on to Dryer he can draw up all the legal docs quickly so this wont cost us much $$$ to create.*

*Lets nail this down over the next few days so I can give to David [Dryer – Condo Domain's attorney] and get you final "legal docs" for your attorney to review.*

36.   Longo's "one pager" (the **Equity Conversion Document")** is entitled "(Updated 3/17/09) Akshay Equity/Conversion Draft Guidelines. 10% Equity Stake in CondoDomain.com LLC." The document provides, in part: "Front End development & Database Management – Completed – 5% Equity." The document also provides: "Back End Development – Not Complete – 5% Equity." A true and accurate copy of the Equity Conversion Document is attached to the Verified Complaint as **Exhibit G.**

37.   Pursuant to the Equity Conversion Document, Longo admitted that Dreaming Code had already earned a five per cent (5%) equity stake in Condo Domain by virtue of its work on the Expanded Website.

38.   Based, in part, on the representations and promises made in the Equity Conversion Document, Dreaming Code continued to work on the Expanded Website for Condo Domain as Longo had requested.

39.   As of March 17, 2009, Dreaming Code had already completed in excess of 1,000 person hours of work on the Expanded Website for Condo Domain and as of this date the Expanded Website "covered" approximately 19 cities.

40.   I grew increasingly concerned as Condo Domain continued to break its payment obligations under the Boston Contract.

41.   Reasserting his promises and representations made in the Equity Conversion Document, Longo wrote to me by email dated September 22, 2009:

*Everything is getting drawn up, contracts, relationship, pay down, equity docs, and I want you to meet Chancellor [Peterson] as he is running all our budgets now, etc and we have a ferw design upgrades we need quotes on...*

A True and accurate copy of the September 22, 2009 email is attached to the Verified Complaint as **Exhibit I.**

### Condo Domain Has Admitted Its Debt to Dreaming Code Numerous Times.

42.  As of November 30, 2009 Longo acknowledged that Condo Domain's outstanding monthly hosting fees under the Boston Contract were $30,500.00.

43.  By email dated December 8, 2009, Longo again promised that Condo Domain would pay off the balances owed to Dreaming Code. He wrote:

*Confidential - I am gtting a $35M listing in NYC (I Know nuts) – commission is 1.8M (split in 2 of course)*

*I can not wait to pay you off in full so the people who work there like me again!*

A true and accurate copy of the December 8, 2009 email is attached to the verified Complaint as **Exhibit K.**

44.  Condo Domain's promised windfall did not materialize, and its balances with Dreaming Code continued to grow.

### Condo Domain Owes Dreaming Code At Least $322,000.00

45.  As of the date of this Affidavit, Condo Domain owes Dreaming Code an amount not less than $225,000.00 for the development costs for the Expanded Website.

46.  Additionally, Condo Domain is obligated to pay Dreaming Code a monthly subscription and licensing fee for each additional city in the Expanded Website at

the blended discounted rate of $250 per month per activated city from the date of the launch of each such city.

47. As of the date of this Affidavit, Condo Domain has activated 19 cities under the Expanded Website.

48. As of the date of this Verified Complaint, Condo Domain owes Dreaming Code (in addition to the other amounts set forth herein) an additional $57,000 for the subscription fees referred to in the above-referenced paragraph.

49. The above-referenced figure is calculated by taking the number of activated cities (19) multiplied by the blended discounted rate of $250 per month running from May 1, 2009 to May 1, 2010.

50. Condo Domain paid only for minor change orders and cosmetic upgrades for the Expanded Website. However it has not paid its monthly service fees, the development costs borne by Dreaming Code for the core functionality of the entire Expanded Website and the more than 30 blogs that are associated with the city sites.

51. In fact, each separate city and affiliated blog constitutes two separate websites. Accordingly, as of May 2010, Dreaming Code had developed, built, maintained, and hosted over 60 websites for Condo Domain.

52. Although Dreaming Code had provided Condo Domain the facility to activate 33 cities pursuant to the Expanded Website, as of May, 2010, Condo Domain had activated only 19.

53. Condo Domain began to use the Expanded Website and to benefit from it, and has been using and benefiting from the core components that power it since as early as October 2008.

54.

55.    As of January 2010, with his company in debt to Dreaming Code for nearly $40,000.00 in monthly service and support fees (and excluding amounts owed for the work on the Expanded Website), Longo, himself, continued to live a lavish life in New York City. From December 28, 2009 to January 4, 2010, he vacationed in Geneva, Switzerland.

56.    Longo also confided to me that Condo Domain was making use of Microsoft proprietary products for which Condo Domain was not paying.


**Condo Domain Recently Makes a False Promise to Pay Down Its Debt to Dreaming Code, But Instead, Without Notice to Dreaming Code, Transfers Dreaming Code's Intellectual Property and Other Content to a Third Party Without Paying for It and in <u>Violation of Multiple Contract Provisions.</u>**

57.    As Condo Domain's debt to Dreaming Code grew, Longo continued to make excuses for Condo Domain's failure to pay its bills to Dreaming Code.  These ranged from: inadvertence, to the fact that his mother was on vacation, to the fact that his mother was in Florida [how this interfered with payment was not explained], to the representation that his father had had a heart attack. (As of the date of the within Verified Complaint, upon information and belief, Longo's father is alive and well).

58.    In early May, 2010, Longo promised to deliver a check to Dreaming Code to pay down existing debt to Dreaming Code. He also promised and assured me that his father would make good on the payment if Condo Domain could not come up with the funds.

59.   The above-referenced representation was made as a deliberate attempt to buy time to enable Condo Domain to transfer the content of the Expanded Website to a third party host without notice to Dreaming Code.

60.   Shortly thereafter, without notice to Dreaming Code and in violation of the thirty-day notice requirement under the Boston Contract, Longo caused the entire Condo Domain website to be relocated to a third party hosting company.

61.   On May 8, 2010, Longo delivered a lengthy email to me, which was in sharp contrast (and in fact contradicted Longo's voicemail of April 5, 2010 and his early May representations about payment). The May 8, 2010 email; represented in part, as follows:

> *...Now that I am no longer handcuffed to your company, your backend system or your services, I can finally tell you all of this.*
>
> *Our new site should be launched within the next few days. As you can imagine  I am neck deep in development with this project as I have been for the past 3 weeks, more than 18 hours per day.  I do acknowledge we still have an outstanding balance with you in which we WILL pay as that is how I operate as an honest and fair business person.  We will also pay a prorated amount for our hosting for the month of May from May 1 to today May 7th...*
>
> *...Last note.  Just so you know and you don't try to strong-arm me one last time.  I have made a complete copy of our website(s) and blog(s).  The exact duplicate "offline" copy site sits next to me on an external hard-drive safe from web-attacks by hackers.*
>
> *Happy to meet in Boston or do a phone call and transfer these file – which ever is best - and of course satisfy final payments to DreamingCode....*

A true and accurate copy of the above-referenced email is attached to the Verified Complaint as **Exhibit M.**

Condo Domain's *de facto* unilateral termination of the Boston Contract was in violation of the notice provisions of Section 10 thereof..

(a)     made numerous material misrepresentations to me that were designed specifically to get Dreaming Code to forbear from taking action against Condo Domain;

(b)     transferred Dreaming Code's intellectual property and other content to third parties, without paying for it, without notice to Dreaming Code, and in violation of several contractual obligations;

(c)     made hard copies of the Dreaming Code-designed web site and blogs without paying for same, without notice to Dreaming Code, and in violation of contractual obligations;

(d)     violated confidentiality provisions of the contract;

(e)     reneged on multiple promises of payment and other forms of compensation – while at the same time admitting to the debt owed to Dreaming Code;

(f)     admitted to engaging in similar practices, such as using Microsoft-owned mapping software and content without paying for it;

(g)     gave numerous bogus excuses for failing to pay Dreaming Code invoices, which, at various times relied on claims having to do with Longo's mother, father, and sister;

(h)     removed all references to Dreaming Code on the Condo Domain website, including on the copyright notice, which claims, falsely, that Condo Domain is the copyright owner of content developed by dreaming Code and for which Condo Domain has not paid, and;

(i)       failed and refused to pay amounts due and owing to Dreaming Code under the Boston Contract and the Expanded Website in an amount not less than $322,000.00 exclusive of interest, and attorneys' fees.

.

68.   Based on the foregoing, and the additional allegations set forth in the Verified Complaint, about which I have direct, personal knowledge, I am convinced that there is a clear and present danger that if the defendants were given advance notice of the plaintiff's requests for pre-judgment relief, they would seek to convey assets or remove them from the state or conceal them, or other wise seek to put them out of the reach of Dreaming Code.

69.   Indeed, the record (which includes the defendants' own written admissions) reflects that they have already done this.

**No Liability Insurance Available to Pay a Judgment**

70.   I am unaware of the existence of any liability insurance to satisfy any judgment that Dreaming Code may obtain in this action. Further, Dreaming Code has alleged several intentional torts, such as misrepresentation and violations of G.L. ch. 93A for which liability insurance is likely unavailable.

Signed under the pains and penalties of perjury this ⟨10⟩th day of June 2010.

_____
Akshay Vazirani

16

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
Civil Docket No.:

---

DREAMING CODE, INC.

Plaintiff,

v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

Defendants,

BANK OF AMERICA, N.A.,

Trustee Defendant,

---

## *EX PARTE* MOTION OF DREAMING CODE, INC. FOR ORDER ALLOWING ATTACHMENT ON TRUSTEE PROCESS

Pursuant to Rule 4.2 of the Massachusetts Rules of Civil Procedure, the plaintiff, Dreaming Code, Inc.  ("**Dreaming Code**") moves, this Court, *ex parte*, for an order allowing an attachment on trustee process in the amount of $350,000 of the goods, effects, or credits owned by the defendants, CondoDomain.com, LLC and Anthony N, Longo, Jr., in the hands or possession of the Trustee, Bank of America, N.A.

In support hereof, Dreaming Code states as follows:

1.  Dreaming Code has a reasonable likelihood of recovering a judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance available to satisfy the judgment.

2.  Upon information and belief, the Trustee is holding goods, effects, or credits in one or more accounts belonging to the defendants that may be attached to satisfy the defendants' payment obligations to Dreaming Code.

3.  As certified in the affidavit of Akshay Vazirani, the plaintiff is unaware of the existence of liability insurance in an amount  adequate to satisfy a judgment (which may also include recovery of interest, costs,  reasonable attorneys fees, and treble damages under M.G.L. ch. 93A) that may be obtained in this action.

In further support of this Motion, Dreaming Code relies on the Affidavit Akshay Vazirani, and the Verified Complaint all submitted herewith.

WHEREFORE, Dreaming Code moves for allowance of this Motion and for such further relief as the Court deems equitable and just.

Dreaming Code, Inc.

By its attorneys

Seth H. Salinger (BBO #635426)
53 Langley Road
Suite 270
Piccadilly Square
Newton, MA 02459
Telephone # (617) 244-7630
Fax # (617) 244-7640
Sethsal@gmail.com

2

_____

Robert Keough (BBO #564535)
CUMSKY & LEVIN, LLP
6 University Road
Cambridge, MA  02138
Telephone # (617) 492-9700
Fax # (617) 492-9020
RKeough@CumskyLevin.Com

Dated June 10, 2010

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                          SUPERIOR COURT
                                                    Civil Docket No.:

_____

DREAMING CODE, INC.

       Plaintiff,

       v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

       Defendants,

BANK OF AMERICA, N.A.,

       Trustee Defendant,
_____

### *EX PARTE* MOTION OF DREAMING CODE, INC. FOR SHORT ORDER OF NOTICE

    The plaintiff, Dreaming Code, Inc. (**"Dreaming Code"**), moves, this Court grant a short order of notice on Dreaming Code's Requests for trustee Attachment and Injunctive relief and that the Court schedule these matters for hearing on _____, June __, 2010 at 2:00 P.M. in Suffolk Superior Court.

    WHEREFORE, Dreaming Code moves for allowance of this Motion and for such further relief as the Court deems equitable and just.

Dreaming Code, Inc.

By its attorneys

Seth H. Salinger (BBO #555426)
53 Langley Road
Suite 270
Piccadilly Square
Newton, MA 02459
Telephone # (617) 244-7630
Fax # (617) 244-7640
Sethsal@gmail.com

Robert Keough (BBO #564535)
CUMSKY & LEVIN, LLP
6 University Road
Cambridge, MA  02138
Telephone # (617) 492-9700
Fax # (617) 492-9020
RKeough@CumskyLevin.Com

Dated June 10, 2010

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
Civil Docket No.:

_____

DREAMING CODE, INC.

Plaintiff,

v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

Defendants,

BANK OF AMERICA, N.A.,

Trustee Defendant,

_____

## TEMPORARY RESTRAINING ORDER

Upon Motion of the Plaintiff, Dreaming Code, Inc. (hereinafter "**Dreaming Code**"),
and upon review of the Affidavit of Akshay Vazirani, and the Verified Complaint, the Court
finds and rules that Dreaming Code, has demonstrated that: (1) without the relief hereby
granted it would suffer immediate irreparable harm, loss, or damage that is continuing and;
(2) that, there is a likelihood that, if the adverse parties or their attorney were given
advance notice of the request for injunctive relief, Dreaming Code would suffer further
harm. Dreaming is, therefore, entitled to a Temporary Restraining Order, as requested in
Prayers b and c of the Verified Complaint.

Accordingly, it is hereby ORDERED that:

(1)     The defendants, CondoDomain.com, LLC. and Anthony J. Longo, Jr., and any person acting or purporting to act on behalf of said defendants, and those persons in active concert or participation with the Defendants who receive actual notice of the order, from transferring, encumbering or conveying any of said Defendants' property of any kind (including, but not limited to, membership interests in Condo Domain), other than in the ordinary course of business;

(2)     The defendants, CondoDomain.com, LLC. and Anthony J. Longo, Jr., and any person acting or purporting to act on behalf of said defendants, and those persons in active concert or participation with the Defendants who receive actual notice of the order, are hereby restrained from making any use whatsoever of the software and code that operates the Condo Domain website with the following Internet address: http://www.condodomain.com/

The Clerk is hereby directed to set this matter down for a hearing, with notice to the defendants, on the plaintiff's request for a Preliminary Injunction, as requested in prayers b and C

SO ORDERED:

_____
(Associate Justice of the Superior Court)

2

# Commonwealth of Massachusetts

**SUFFOLK, ss.**

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. ___10-2341___
(AFFIX FILING STAMP HERE)

_____Dreaming Code, Inc._____ , Plaintiff(s)

v.

_____Condodomain.com, LLC ET AL___ , Defendant(s)

## SUMMONS AND RESTRAINING ORDER

To the above-named Defendant:   Condodomain.com, LLC. & Anthony J. Longo, JR

You are hereby summoned and required to serve upon ___Cumsky & Levin, LLP___ , plaintiff's attorney, whose address is ___6 University Rd Cambridge, MA. 02138___ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You also are required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim that you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing  upon such application will be held at the court house at said Boston in courtroom ___916___ of said court on ___Tuesday___ the ___22nd___ day of ___June___ A.D. 2002010 at ___Two___ o'clock PM, at which you may appear and show cause why such application should not be granted.

FORM CIV.P.3  5M 12/04

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                              SUPERIOR COURT
                                        Civil Docket No.:


DREAMING CODE, INC.                     10 2341 $E$

          Plaintiff,

          v.

CONDODOMAIN.COM, LLC,
and ANTHONY J. LONGO, JR.

          Defendants,


BANK OF AMERICA, N.A.,


          Trustee Defendant,


## TEMPORARY RESTRAINING ORDER


Upon Motion of the Plaintiff, Dreaming Code, Inc. (hereinafter "**Dreaming Code**"), and upon review of the Affidavit of Akshay Vazirani, and the Verified Complaint, the Court finds and rules that Dreaming Code, has demonstrated that: (1) without the relief hereby granted it would suffer immediate irreparable harm, loss, or damage that is continuing and; (2) that, there is a likelihood that, if the adverse parties or their attorney were given advance notice of the request for injunctive relief, Dreaming Code would suffer further harm. Dreaming is, therefore, entitled to a Temporary Restraining Order, as requested in Prayers b and c of the Verified Complaint.

Accordingly, it is hereby ORDERED that:

(1)   The defendants, CondoDomain.com, LLC. and Anthony J. Longo, Jr., and any person acting or purporting to act on behalf of said defendants, and those persons in active concert or participation with the Defendants who receive actual notice of the order, from transferring, encumbering or conveying any of said Defendants' property of any kind (including, but not limited to, membership interests in Condo Domain), other than in the ordinary course of business;

(2)   The defendants, CondoDomain.com, LLC. and Anthony J. Longo, Jr., and any person acting or purporting to act on behalf of said defendants, and those persons in active concert or participation with the Defendants who receive actual notice of the order, are hereby restrained from making any use whatsoever of the software and code that operates the Condo Domain website with the following Internet address: http://www.condodomain.com/

The Clerk is hereby directed to set this matter down for a hearing, with notice to the defendants, on the plaintiff's request for a Preliminary Injunction, as requested in prayers b and C

SO ORDERED:

_____
(Associate Justice of the Superior Court)

11 June '10

1430

2

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons and restraining orders, together with a copy of the complaint in this action, upon the within named defendant, in the following manner (See Mass. R. Civ. P. 4(d)(1-5):

_____

_____

_____

Dated: _____ , 200___.

**N.B.  TO PROCESS SERVER:**
PLEASE PLACE **DATE** YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX **ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

| , 200  . |
|---|

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                  SUPERIOR COURT DEPARTMENT
                             OF THE TRIAL COURT
                             CIVIL ACTION
                             No._____

_____ , Plff(s).


                    v.


_____ , Deft(s).


**SUMMONS**
(Mass. R. Civ. P. 4)
**AND**
**ORDER OF NOTICE**
**WITH**
**TEMPORARY RESTRAINING ORDER**